# HAROLD GLOVER v. EDWARD W. GLOVER ANDREW GLOVER and PEARL GLOVER
## —319 S. W. (2d) 238.

Middle Section.   July 3, 1958.

Certiorari denied by Supreme Court December 12, 1958.

714

Noble Freemon, Jr., Lawrenceburg, for plaintiff.

Harwell & Boston, Lawrenceburg, for defendants.

I

SHRIVER, J. This is a suit for damages for personal injuries sustained in an automobile accident. Plaintiff, Harold Glover, was riding as a passenger in a car owned and driven by his cousin, defendant Edward Glover,

when it collided head-on with a pick-up truck owned by plaintiff's father, Andrew Glover, and being driven by plaintiff's mother, defendant Pearl Glover.

The accident occurred in Lauderdale County, Alabama, on Jan. 29, 1955, at which time plaintiff was a minor 19 years old. Suit was brought in Lawrence County, Tennessee, and personal service was had on the defendants in that county.

Andrew and Pearl Glover filed a plea entitled "Plea in Abatement" but which is in fact a plea in bar, averring that their son, Harold Glover, was born July 24, 1935 and was an unemancipated minor, age 19 years, at the time of the accident and that, therefore, he could not maintain a suit against his parents.

Issue was joined on this plea, and, after hearing the testimony of the plaintiff, the Court sustained it, dismissing plaintiff's action. After a motion for a new trial was made and overruled the cause was appealed in error to this Court and assignments filed.

## II

It is stated by counsel for defendants that the facts and circumstances surrounding this accident, as to who was negligent, what was the proximate cause, etc., are not at issue on this appeal, but merely the question of whether or not Harold Glover, who was a minor at the time of the accident, can maintain an action for damages against his father and mother.

The testimony shows that plaintiff at the time of the accident was a member of the U. S. Air Force and was at home on a furlough. He testified that he had wanted

to go into the Armed Forces when he was seventeen years old but that his parents objected and stated to him that if he would wait until he reached the age of eighteen that he would have their permission to join. He waited until he was 19 years of age and then joined the U. S. Air Force. He did not make his parents an allotment nor did he turn over any of his earnings to them.

The testimony further shows that for two years before joining the Air Force, plaintiff had contracted with his father to put in crops of corn, cotton and hay and had thus supported himself at least to some extent during those two years. He testified that his father furnished the tractor and gas and received two-thirds of the corn and hay, and the landowners from whom they rented the land got one-third of the corn and hay and one-fourth of cotton, which amounted to nine bales the first year and seven bales the second year, his part amounted to about $1,000 each year, under the plan.

He further stated that during this time he remained at home with his father and mother and was subject to their control; that he did not pay any amount to his father for his support; and that he was 19 years of age when he went into the Armed Forces with the approval of his parents. He testified on cross-examination.

"Q. You were subject, I take it, also, to their control, you didn't do anything contrary to their wishes? A. No.

"Q. You felt like you were their son and followed their wishes and control? A. Yes, sir.

"Q. And still intend to do so? A. Sure."

He further testified that he was 20 years old at the time of the trial and would be 21 in July of that year.

On re-direct examination he testified:

"Q. Has your father ever told you to turn over any of the money that you made while in the armed forces to him? A. No.

"Q. Has he treated you like a man that you were able to make your own decisions? A. That's right.

"Q. Has he treated you man to man, or as father to a child? A. Man to man."

Counsel for plaintiff insists that the facts shown by the record, as to the farming operations of the plaintiff and his arrangement with his father as to same, amounted to a partnership and that these facts give rise to the implication that the minor was so emancipated by his father before his entrance into the armed services as that he could maintain this action.

It is the further insistence of the counsel for plaintiff that the enlistment of the plaintiff in the Armed Forces of the U. S. with the consent of the father and mother was a complete emancipation and that this condition existed at the time of the injuries in question and, therefore, he is able to maintain this action.

He insists that enlistment in the military service, as a matter of law, amounted to emancipation and, therefore, it was error to sustain the Plea in Abatement and that, at least, the question as to his emancipation was a question of fact for submission to the jury.

## III

### Assignments of Error

There are five assignments of error, but, in the aggregate, they raise the two questions recited hereinabove, to wit, (1) whether or not it was error for the Court to sustain the Plea in Abatement in view of the testimony regarding the farming contract of the plaintiff with his father and circumstances surrounding his life in the home prior to his entrance into the Armed Forces; and (2) was it error to sustain the plea in view of the military status of plaintiff.

## IV

■ Under the authorities it is generally held that a minor cannot sue his parents in a tort action. However, one of the recognized exceptions to this rule is in the event of the emancipation of a minor, in which event he or she can maintain an action in tort against the parents.

In the annotation in 122 A. L. R. p. 1355, it is said that the number of cases involving the questions raised here are rapidly increasing and that certain differentiating features have appeared in the later cases.

■ There is no reported Tennessee case that we have been able to discover which is exactly in point, however, this accident occurred in Alabama, hence, Alabama law is controlling.

In the early case of Donegan v. Davis, 66 Ala. 362, it was held,

"Emancipation vel non is, at most, a question of fact, to be determined by the circumstances in evidence; it is not necessary, in every case, to show an

abandonment of home by the infant, or a disruption of family ties; it is sufficient, as in this case, to show that he supported himself, and paid for his board at home, his father being insolvent.''

In a later case, Sinclair v. Taylor, 1937, 27 Ala. App. 418, 173 So. 878, the Court held,

Syl. 6. ''Mother was not entitled to recover for injuries to daughter, if at time of accident daughter had been emancipated.''

Syl. 7. ''In suit by mother for injuries to 19 year old daughter who was servant outside of mother's home, but who lived with mother in home of her brother-in-law, whether daughter was emancipated so as to preclude recovery by mother held for jury.''

And in Cragford Bank v. Cummings, 216 Ala. 377, 113 So. 243, it was said that a father may emancipate a child and allow him to earn for himself, free from the claims of father or his creditors. And to like effect is Lyon v. Bolling, 14 Ala. 753.

In Fowlkes v. Ray-O-Vac Co., 52 Ga. App. 338, 183 S. E. 210, it was held that, while an unemancipated minor cannot sue a father for a tort to himself, yet the rule is different, and such an action is maintainable if the child is emancipated at the time of the tort and the action.

It is pointed out in the notes in 122 A. L. R. 1355, that in Martens v. Martens, 11 N. J. Misc. 705, 167 A. 227, one of the questions involved was as to whether or not the minor was emancipated at the time of the injury incurred in an automobile collision for which she was suing her father. The Court, apparently assumed that

the action would lie in the event she was emancipated at the time.

In Reingold v. Reingold, 155 N. J. L. 532, 181 A. 153, it was expressly stated that the Court was not to be understood as holding that a child might not sue its parents in tort for actionable negligence which occurred after the child became of age and was fully emancipated. However, it was held that the child who had obtained majority could not sue for an injury which occurred before the emancipation took place.

■■ In 67 C. J. S. sec. 87, p. 812, under the title "Parent and Child", it is pointed out that emancipation of a minor may be partial or complete, express or implied, and has the effect of rendering the child sui juris as far as respects its relationship to its parents. It is stated in the text,

"Emancipation may result from agreement, or it may occur by operation of law. It has been asserted as a general rule that emancipation of the child leaves the child, as far as the parent is concerned, free to act on its own responsibility and in accordance with its own will and pleasure, with the same independence as though it had attained majority."

In Wallace v. Cox, 136 Tenn. 69, 188 S. W. 611, L. R. A. 1917B, 690, emancipation was defined as follows:

" 'Emancipation' of a child is the relinquishment by a parent of control or authority over the child, conferring on him the right to his own earnings and terminating the parent's legal duty to support; it may be express, as by voluntary agreement of parent and child, or implied from such acts and conduct

as import consent, and it may be conditional or absolute, complete or partial.''

In Memphis Steel Construction Co. v. Lister, 138 Tenn. 307, 197 S. W. 902, L. R. A. 1918B, 406, it was held that complete emancipation loses to the parent custody and control and works a severance of the legal filial relation as completely as if the child were of age.

In Going v. Going, 8 Tenn. App. 690, it was said that the marriage of a minor, even without the parents' consent, emancipates a child from the custody of the parents; for the marriage creates relations inconsistent with subjection to the control of the parents.

It was further said, that emancipation of a child is the relinquishment by the parents of control and authority over the child, conferring on him the right to his earnings and terminating the parents' legal duty of support.

Again in 67 C. J. S. Parent and Child sec. 88, p. 813, it is said that, in the absence of a statutory provision to the contrary, the intention of a parent to emancipate his child need not be evidenced by any formal or record act. The intention to emancipate may be expressed either in writing or orally, or it may be implied from conduct or from other circumstances. The text goes on to state,

''Thus it has been held that a child is emancipated where the parent allows it to carry on a business for itself and exercises no control over it or its earnings, or where the father gives or sells the child his time. Emancipation may also be implied by the parent's acquiescence in his child's working for others, re-

ceiving its pay therefor, and spending the money as it pleases.

*   *   *   *   *   *

"On the other hand, the fact that the son lives in the family of the father does not establish that he is not emancipated; there may be complete emancipation, even though the minor continues to live with its parents, and this is true, even though the child continued to assist the parent in the parent's work. The parent's renunciation of all legal right to the child's services is not less absolute because other family ties continue unbroken."

A leading case dealing with the subject of a minor's right to sue a parent in tort is Dunlap v. Dunlap, 84 N. H. 352, 150 A. 905, 71 A. L. R. 1055, where the Chief Justice of New Hampshire Supreme Court in an exhaustive opinion reviewing all the authorities disagrees with the rule that prevents a minor from suing the parents in tort.

The opinion states that there never has been a common law rule that a child could not sue its parent. It is a misapprehension of the situation to treat the suits which have been allowed as exceptions to the general rule. It is said that the minor has the same right to redress for wrongs as any other individual and that investigation of the subject should start with this point. The limitations which have been put upon that right have been deduced from prevalent ideas touching family life and especially parental rights and duties. The Court states that out of it all there emerges one substantial and reasonable ground for denying a recovery, and only one.

The parental authority should be so far supreme that whatever would unduly impair it should be foregone by the child for his ultimate good. It is stated that Mr. Cooley could find no reason why the action should not be maintained but thought the policy of forbidding the child to contest the parent's authority would lead to a failure to sanction suits for excessive punishment. Cooley on Torts p. 197.

The rule was first announced in this country in Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, and the array of authority for this rule is not so overwhelming as it might appear since there is respectable authority supporting the view that suit may be maintained by a minor in a tort action against the parent. Suits by minors against fathers upon contracts and to redress wrongs to the child's property rights are almost universally allowed.

■ The reasons lying underneath the rule that prevents a minor from suing the parent are that parental authority and the family peace should be maintained. Whenever it appears that these later reasons do not apply the rule loses its force.

In Dunlap v. Dunlap, supra [84 N. H. 352, 150 A. 912], it was held:

"While it is true that emancipating acts are not to be presumed (Cox v. Pinkham, 80 N. H. 134, 114 A. 18), it is equally true that they may be inferred. 'The father did not "put his consent into words;" but his acts * * * relative to the daughter's employment at various times * * * justify the inference that he so consented on this occasion, and thus ex-

pressed his consent as effectually "as words would have done." ' Johnson v. Silsbee, 49 N. H. 543, 544.

\* \* \* \* \* \*

"As often stated before, the sole debatable excuse advanced for the denial of the child's right to sue is the effect a suit would have upon discipline and family life. If, therefore, the situation is such that the suit will not affect those matters at all, the reason for the theory fails, and it should not be applied.

\* \* \* \* \* \*

"Emancipation is an answer to this defense, because the father's act has so changed the situation that it is everywhere conceded that there is no longer valid reason for denying a recovery. When the right of discipline and family association have been surrendered, a rule intended to preserve their integrity is not applicable."

It was specifically held in Dunlap v. Dunlap, that where a minor child was injured while employed by the father a jury question as to emancipation was raised and it was further held as follows:

"Child's disability to sue the parent for tort is inapplicable to emancipated child or to a case where liability has been transferred to a third party."

In 20 R. C. L. at page 611, under the title "Incidents of Emancipation" it is stated that when a child has been emancipated, whether expressly or impliedly, and has entered into a lawful contractual relationship, the parent cannot revoke the child's emancipation so as to abrogate such contract or affect the rights of the contracting

parties acquired thereunder and that where there has been a complete emancipation by express agreement a minor son occupies the same legal relation to his father as if he had arrived to full age.

■ And in 67 C. J. S. Parent and Child sec. 88, p. 814, it is said that the fact that the son lives in the family of the father does not establish that he is not emancipated, there may be complete emancipation even though the minor continues to live with its parents, and this is true even though the child continues to assist the parent in the parent's work.

Now as to the effect of enlistment in the military services.

In 67 C. J. S. Parent and Child sec. 88, at page 814, it is said:

"*Consent to Enlistment.* A minor who, with the consent of its parent, enlists in the military or naval service of the government is emancipated as long as such service continues. The period of its emancipation ceases, however, with the period of its service. The reason for this rule is that enlistment gives rise to a new relation inconsistent with subjection to the control and care of the parent."

In 20 R. C. L. at page 610, under the subject "Parent and Child" it is said:

"So, if the father permits his son to enlist in the U. S. Army, the pay and bounties earned in the service belong to the son. Emancipation may also be implied in a case where the father permits his son to pay his earnings to his mother, who accumulates them, and the fund is always spoken of as the

son's. Emancipation may occur though the child continues to live in the father's house." Citing 137 A. L. R. 1467 to 1490; 12 A. L. R. 924; Swenson v. Swenson, 241 Mo. App. 21, 227 S. W. (2d) 103, 20 A. L. R. (2d) 1409; 155 A. L. R. 1451; 157 A. L. R. 1449.

In Iroquois Iron Co. v. Industrial Commission, 294 Ill. 106, 128 N. E. 289, 12 A. L. R. 924, it was held, (1) "A minor enlisting in the military service of this country is emancipated so long as this service continues." (2) "Emancipation is inferred where a child contracts for his services and uses his own earnings."

In 137 A. L. R. 1490 in a note entitled 'Enlistment, or consent to enlistment, of a minor as emancipating him," it is said:

"A minor who enlists in the armed forces of the state or nation is thereby emancipated or freed from parental control for at least such period of time as he is lawfully subject to the control of his commanding officers. And of course the consent of the father to the enlistment of his minor son is a virtual emancipation." Citing United States v. Williams, 1937, 302 U. S. 46, 58 S. Ct. 81, 82 L. Ed. 39, rehearing denied 302 U. S. 779, 58 S. Ct. 361, 82 L. Ed. 602, and cases from a number of state jurisdictions.

## V

■ Thus we are of opinion that the question as to whether or not the farming operations of plaintiff prior to his military services, and his contract with his father in regard to same, together with the other facts and circumstances in the record, raise some doubt as to

whether or not the minor remained unemancipated, and that the minds of reasonable men might differ as to the conclusion to be reached from these facts and circumstances, hence, raises a question of fact which should be submitted to the jury.

■ As to the fact of the plaintiff's military service, it appears that he entered the U. S. Air Force with his parents' consent and was actively engaged in such and was only home on furlough. Under the authorities, generally, this would amount to an emancipation as a matter of law.

■ But if, by his testimony, any doubt is raised as to whether or not he was emancipated at the time, at least, there was a question of fact to be determined by a jury.

It being the general law of the land that an emancipated minor of 19 years can maintain an action against his parents for tort, we find it necessary to sustain the assignments of error, reverse the action of the lower Court and remand the cause for a new trial. ·

Reversed and remanded.

Felts and Hickerson, JJ., concur.