Denise **FUGATE**, a minor by her next friend, Carl Edward Stroup, Plaintiff-Appellant,

v.

Harold **FUGATE**, Defendant-Respondent.

No. 60357.

Supreme Court of Missouri, En Banc.

June 19, 1979.

Keith Brown, James R. Bickel, Nevada, Mo., for plaintiff-appellant.

Laurence H. Flanigan, Carthage, Mo., for defendant-respondent.

BARDGETT, Judge.

The question on this appeal is whether or not the doctrine of parental immunity bars an action brought by an unemancipated minor child, aged 10, against her father, seeking damages for the negligent wrongful death of her mother in a case where the mother and father had been divorced and the general custody of the child had been placed with the mother.

The circuit court held an evidentiary hearing on defendant-respondent-father's (hereinafter defendant) motion to dismiss. The evidence on the motion indicated there had been no disruption in the harmonious relationship between defendant and his daughter (hereinafter plaintiff) because of the filing of this wrongful death action. The court so found but, nevertheless, sustained the motion to dismiss and it is obvious the ruling was on the belief that parental immunity barred this suit. Plaintiff appealed to the Missouri Court of Appeals, Southern District, and the judges[1] of that court recommended transfer prior to opinion because the case presented a matter of statewide interest and importance. The court of appeals noted that our earlier case of *Bahr v. Bahr*, 478 S.W.2d 400, 402 (Mo. 1972) seemed to imply, and the plaintiff in this case argued, that the rule of parental immunity would be applied subjectively on a case-by-case basis in every case in which an unemancipated minor sued a parent and observed that the bench and bar needed further and more specific guidance as to when parental immunity will be applied or relaxed.

On the recommendation of the court of appeals and pursuant to art. 5, sec. 10, Mo.Const., as amended 1970, the appeal was transferred to this court.

I.

Defendant Harold Fugate and Verla Mae Fugate (deceased) had been married. They had one child, plaintiff Denise Fugate, born August 30, 1964. Harold and Verla Mae were divorced on December 8, 1972. The divorce decree placed the general care, custody and control of Denise, then eight years old, with the mother, subject to certain visitation and temporary custody rights in the father. Harold was ordered to pay $150 per month to Verla Mae for the support of Denise. Defendant paid the child support, substantially exercised his visitation and temporary custody rights, and the relationship between Denise and her father was very good.

Verla Mae was killed March 15, 1974, while riding in defendant's car as a passenger, allegedly due to defendant's negligence. After her mother's death, Denise lived with defendant who has assumed her care and custody, and has at times lived with both sets of grandparents. Defendant had public liability insurance in effect on the car at the time of the accident.

On December 30, 1974, this wrongful death suit was filed pursuant to sec. 537.-080, RSMo 1969, for the benefit of Denise, there being no surviving spouse or other minor children of Verla Mae.

As noted supra, the defendant's motion to dismiss on the ground that the doctrine of parental immunity prohibited the maintenance of this suit was sustained by the trial court.

II.

On this appeal plaintiff urges four points for reversal. (1) The trial court should have overruled defendant's motion to dismiss because Missouri's wrongful death statute abrogates the common-law doctrine of parental immunity by vesting a cause of action in minor children from the wrongful death of a parent "in every such case" that the person would have been liable if death had not ensued. (2) The trial court should have overruled defendant's motion to dismiss because prior Missouri cases have recognized intra-family lawsuits in tort. These cases preceded *Baker v. Baker*, 364 Mo. 453, 263

---

1. Flanigan, J., not sitting.

S.W.2d 29 (1953), which discusses the doctrine of parental immunity favorably. (3) The trial court erred in applying the general rule of parental immunity to the facts of this case. The *Baker* case has been modified by recent cases. In *Baker* the court stated that the rule in Missouri opposes any disruption of family relationships and consequently applied the parental immunity doctrine to bar a suit by a child against the parent for negligence. The modern view is that a child may sue a parent in tort if two conditions are present. First, the emancipated child may sue. *Wurth v. Wurth*, 322 S.W.2d 745 (Mo. banc 1959). Also, the child may maintain a negligence action against the parent if the trial court concludes after an evidentiary hearing that legal proceedings will not disrupt family harmony. *Brennecke v. Kilpatrick*, 336 S.W.2d 68 (Mo. banc 1960). In *Bahr v. Bahr, supra,* the court implied that the burden of proof is on the party attempting to rely on the doctrine. Because the trial court found that the suit would not disrupt family harmony or subvert parental control and discipline, the motion to dismiss should have been overruled. (4) Even if the trial court were deemed to have properly applied the Missouri test, this court should abolish or modify the doctrine of parental immunity.

The defendant contends on the other hand that: (1) The trial court properly sustained the motion to dismiss because it is against public policy of this state to allow an unemancipated minor to sue a *living* parent in tort and that while *Brennecke* removed the procedural bar of the parental immunity doctrine when an unemancipated child sued the parent's estate, the doctrine is still viable if the parent is living. (2) The dismissal was proper because the evidence conclusively established that plaintiff was an unemancipated minor. Under *Wurth* plaintiff has the burden of proving that she is emancipated and under the evidence presented at the hearing she cannot sustain that burden. Therefore, a conclusive presumption that an unemancipated child cannot sue a living parent in tort because of public policy considerations controls. *Baker v. Baker, supra.* (3) The cases cited by plaintiff for the proposition that a child can maintain an action for negligence against a parent are "mavericks", and that the rule in Missouri is that an unemancipated child cannot maintain a tort action against a living parent for mere negligence. (4) Defendant's insurance coverage is immaterial to the issues in this lawsuit because Missouri courts have held that the insurance coverage of a party cannot be considered in determining whether the suit can be maintained. (5) Public policy dictates that the plaintiff be barred from maintaining an action for wrongful death against her father. When presented with similar facts, other jurisdictions have held that public policy considerations bar the institution of a suit against the wrongful death statutes.

### III.

Plaintiff's first point is that the Missouri wrongful death statute, sec. 537.080, RSMo 1969, the pertinent part of which reads

"Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, which damages may be sued for and recovered.

"(1) By . . . minor children . . of the deceased . . ."

vests a cause of action in a minor child "in every case" that the decedent mother could have held a defendant father liable had death not ensued, and so abrogates the doctrine of parental immunity in such instances as the present case. The deceased mother could have sued her former husband (father) for injuries received in the accident and her personal representative could have sued for property damage resulting from this accident. Defendant maintains that the public policy of the State of Missouri demands that plaintiff be denied the right

to enforce the cause of action; that public policy being recognized as the interest existing in the state to promote family harmony.

We must determine whether the doctrine of parental immunity operates as a procedural bar to plaintiff's lawsuit based on this cause of action. Most of the cases in which immunity has been posed as a bar have involved suits for direct, personal injuries. Jurisdictions are divided as to the applicability of parental immunity when the suit comes under a wrongful death statute. Plaintiff is within the class of persons entitled to entertain such action under our wrongful death statute, sec. 537.080, RSMo 1969, and several jurisdictions have allowed recovery in cases of indirect injury under similar statutes where the plaintiff-beneficiary maintains a cause of action through the death of another and where the beneficiary is so related to the defendant that the beneficiary could not have maintained suit against him for damages resulting from a direct bodily injury.[2] Several jurisdictions have refused to bar suits by children against parents where the children sue under wrongful death statutes as beneficiaries of parties who could have maintained court actions had they lived. Illustrative of this approach is *Fowler v. Fowler*, 242 S.C. 252, 130 S.E.2d 568 (1963). *Fowler* involved an action brought under a wrongful death statute by the administrator of the deceased mother's estate against the father for the benefit of their minor children. The petition alleged that the father had negligently operated his automobile resulting in a collision in which the mother had been killed. The South Carolina legislature previously had authorized suits in tort between husband and wife. Since, if her death had not ensued, the wife could have brought an action for her injuries against her husband, an action for her death vested in the children. The court in *Fowler* ruled that this cause of action was not barred by the doctrine of parental immunity because the legislature had left any mention of such immunity out of its formulation of the statute. Despite the jurisdiction's general adherence to parental immunity based upon the public policy of preserving family unity, the court interpreted the legislative intent underlying the death statute to require an exception to the doctrine's normal applicability to tort actions.[3]

In contrast, many jurisdictions find no legislative intent to abrogate the doctrine of parental immunity in the wrongful death context. They treat the wrongful death action like any other tort action.[4]

■ Plaintiff has argued that the approach of *Fowler* and *Minkin* should be

**2.** The Pennsylvania Supreme Court has held that an unemancipated child could sue his mother under the state wrongful death statute to recover for the death of his father. In allowing the suit, the court said that the preclusion of suits between parents and children did not apply to the facts before it since the injury to the child was indirect. *Minkin v. Minkin*, 336 Pa. 49, 7 A.2d 461 (1939), Comment 44 Dick.L. Rev. 143 (1940). See also McCurdy: Torts Between Parent and Child, 5 Vill.L.Rev. 521 (1960).

**3.** See *Hale v. Hale*, 312 Ky. 867, 230 S.W.2d 610 (1950).

The majority in *Minkin v. Minkin, supra,* construed a death statute similar to *Fowler,* but a concurring opinion in *Minkin* maintained that the suit should be allowed because wrongful death is more like a property right—for deprivation of support—than a tort affecting the person. Traditionally, courts have freely recognized causes of action between parent and minor child in matters of property. See, generally, 43 Harv.L.Rev. 1057; 44 Dick.L.Rev. 153; *State ex rel. Festor v. Stead,* 143 Mo. 248, 45 S.W. 50 (1898); *Streentz v. Streentz,* 106 Ariz. 86, 471 P.2d 282; *Wells v. Wells,* Mo.App., 48 S.W.2d 109; *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588; *Quinn v. Thigpen,* 266 N.C. 720, 147 S.E.2d 191; *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351.

**4.** For example, in *Durham v. Durham,* 227 Miss. 76, 85 So.2d 807 (1956), an unemancipated minor brought suit against his father for the death of his mother. The father had been negligent, resulting in an automobile collision. The wife, had she survived, could not have brought suit against her husband but, under the peculiar wording of the death statute, this posed no impediment to the child's cause of action for wrongful death. The court disallowed the suit on the ground of parental immunity. It held that the wrongful death statute should be construed consistent with all common-law rules not explicitly abrogated.

adopted in Missouri. We do not agree. While the Missouri statute, sec. 537.080, RSMo 1969, could conceivably be construed to permit a cause of action "in every such case" under *Fowler,* we are of the opinion that the legislature never intended the wrongful death act of 1855 (RSMo 1855, Vol. 1, p. 647) or subsequent amendments thereto to be an exception to parental immunity.

■ Plaintiff contends as her second and third points that even if wrongful death is not an automatic exception to the doctrine of parental immunity by virtue of its legislative origin, nevertheless, under the present test of *Bahr* and *Brennecke,* this particular suit by the minor against her father is not barred and its dismissal was error. We agree. This court stated in *Brennecke* and *Bahr* that parental immunity would not apply either if the child bringing suit was emancipated *or* if the maintenance of the suit would not "seriously disturb the family relations".[5] Defendant points out that plaintiff did not demonstrate emancipation and this is not contested.

However, at the evidentiary hearing there was a strong showing that the future relationship between plaintiff and defendant would not be disrupted by the existence of this suit and the trial judge said he would so find. It would appear therefore that the suit should have been allowed under *Brennecke* and *Bahr.* The Missouri Court of Appeals, Southern District, was aware of this and therefore recommended transfer to this court because it felt that the language of the opinion in *Bahr* is open to the interpretation that the applicability of the "parental immunity" doctrine must be decided in every instance on a case-by-case basis[6] and that further guidance was required as to when the parental-immunity doctrine will be applied or relaxed. As an alternative approach, defendant suggests that every suit in tort brought by an unemancipated minor child against his or her

**5.** In *Brennecke* an unemancipated minor was allowed to sue the *estate* of her deceased mother. She alleged that she had been injured when an automobile negligently operated by her mother, and in which she was a passenger, collided with a gravel truck. The court stated at 73: ". . . such immunity as a parent may have from suit by a minor child for personal tort arises from a *procedural disability* to sue, usually based on public policy, and not from a lack of a violated duty. This disability is not absolute and the cause of action otherwise existing may be asserted if the reasons for its denial are no longer in existence." And at p. 70: "The rule is not an absolute one . . . but generally exists or is adhered to only when the court concludes that to hold otherwise would seriously disturb the family relations and thus be contrary to public policy. The immunity of the parent usually has been predicated upon the premise that to allow such an action against a parent would either disrupt the tranquility of the domestic establishment or subvert parental control and discipline."

This court thus took the position that the rationale or justification had disappeared with the mother's death. No relationship still existed which immunity could protect. This holding made it clear that the applicability of immunity in any one case depended upon the particular facts and circumstances thereof. In order for immunity to apply, those facts would have to indicate that harmonious family relations would be seriously disturbed if suit were allowed or that the suit would subvert parental control and discipline.

**6.** This case-by-case approach was reaffirmed in *Bahr.* In *Bahr* a four-year-old girl living in the custody of her divorced mother visited her divorced father at his mother's home. During the visit the child burned herself on a barbeque pit. She brought suit against her divorced father and his mother alleging their negligence. The trial court dismissed the action on the ground of parental immunity. This court reversed and remanded to allow the plaintiff to show either that she was emancipated and therefore immunity should not apply under *Wurth v. Wurth, supra,* or that under *Brennecke v. Kilpatrick, supra,* the suit would not violate the justification underlying the doctrine of immunity—harmonious family relations. The court stated that it could take one of four alternative approaches: (1) abolish the parental-immunity rule generally; (2) abolish the rule in general but delineate exceptional circumstances in which it would still apply; (3) abolish the immunity but apply a standard of reasonableness "viewed in light of the parental role"; or (4) retain the *Brennecke* position, adhering to the immunity rule only when to hold otherwise would "seriously disturb the family relations" and thus be contrary to public policy. It opted for the last alternative, and remanded to the trial court for a factual determination of whether the policy underlying the doctrine would be offended in allowing the suit.

living parent should be barred as offensive to the public policy protecting domestic harmony, while plaintiff posits that, in the event the *Brennecke-Bahr* test be deemed inadequate, the doctrine of immunity should be modified or abrogated so as to allow suits such as the present one.

■ The rule of parental immunity is a court-made rule. "It was formulated, not by legislative enactment propounding an expressed public policy, but by the courts who asserted their conception of what public policy was". Comment, Tort Actions Between Members of the Family—Husband and Wife—Parent and Child, 20 Mo.L.Rev. 152, 193 (1961). Consequently, courts have a duty to criticize and reexamine the relationship of the rule to public policy and to make such modifications as appear merited. They need not await legislative correction. As Judge Finch stated in his concurring opinion in *Koprivica v. Bethesda General Hospital,* 410 S.W.2d 84 (Mo.1966), regarding the function of the courts with regard to the law of torts, when a "doctrine is one established by the courts, not by the legislature . . . if we ultimately should conclude that it should be changed or modified, we should so hold." *Id.* 87.

The doctrine of parental immunity in all contexts is based upon and applied according to public policy. Therefore, it seems to be a court's function and duty to deal decisively with the relation of that policy to a suit for wrongful death when such a case arises. The position of defendant, which is that suit should be barred in every case where an unemancipated child sues a parent in tort, regardless of whether the defendant is part of the family unit, does not accurately reflect the present doctrine in Missouri. In *Baker v. Baker, supra,* a fifteen-month-old infant girl by her next friend, her mother, brought suit against her father. She sought to recover $15,000 for personal injuries negligently inflicted on her by her father in backing the car out of the driveway. The defendant father was fully insured for any liability and any judgment would have been paid by the insurer. The trial court sustained the defendant's motion to dismiss for failure to state a claim because of the bar posed by parental immunity. We affirmed the dismissal on the ground that a suit by an unemancipated minor child against her parent for mere negligence was contrary to public policy. Importantly, however, was the fact that the child and the parent sued were members of and functioned within the same family unit. Early in the opinion the court stated that this holding was consistent with the general rule barring suits in tort between parent and child, but it qualified this statement indicating that "to say a child may not sue its parent in tort is stating the rule too broadly. Many cases may be found where such suits have been permitted." 263 S.W.2d at 30.

Whenever the courts examine public policy underlying the doctrine of parental immunity, the primary objective must be to decide the issues in the best interests of the family unit as it is that domestic establishment that is the subject of the public policy underlying parental immunity. Our society has evolved around the nucleus of the family unit. It is the family which produces and nurtures continuing generations of individuals from whom the fabric of society is formed. There are a number of circumstances which from time to time result in disharmony or destruction of family relations and on occasion the claim of an individual right appears to run contrary to the interest of the family unit. On such occasions the courts are called upon to balance conflicting interests and determine as nearly as possible for the greater good. The court has taken the position that public policy in the preservation of family harmony wherever possible justifies maintaining the doctrine of parental immunity in appropriate circumstances. As in *Baker,* we recognize that this general rule barring suits in tort between parent and child in the interests of family harmony is not absolute and should not be applied where the reason for the doctrine does not exist.[7] In line

---

**7.** See *Glover v. Glover,* 44 Tenn.App. 712, 319 S.W.2d 238. As where family relationship has been dissolved, *Johnson v. Myers,* 2 Ill.App.3d 844, 277 N.E.2d 778, abandoned, *Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923.

with this reasoning, this court has previously recognized situations in which the doctrine will not be invoked—one, when the child is emancipated, *Wurth v. Wurth, supra,* and, two, where the parent-child relationship has ended by the death of the parent, *Brennecke v. Kilpatrick, supra.*

In *Brennecke* we defined a disturbance in family relations to be a disruption in the "tranquility of the domestic establishment" or a "subvert[ing] [of] parental control and discipline" in which the "family" was perceived to be a household cooperating in the care and rearing of children. In the instant case the family in its traditional sense has already been disrupted through divorce prior to the time this cause of action arose, and the child was not in the custody of her father, the alleged tortfeasor. Instead, a new family unit had been established which consisted of plaintiff and her mother. It was to her mother that the plaintiff looked primarily to provide the daily necessities of life and for continuity in security and affection. It was plaintiff's mother who exercised parental control and provided discipline as needed. An action for wrongful death contains within it a suit for deprivation of this support which plaintiff had the right to expect from her mother had her mother lived. Any limitation put upon that right must be deduced solely from the prevalent concepts touching family life, including the right to custody of and the right to control and discipline the child and the duty to support and properly care for the child.[8] The support obligations which were placed upon the defendant did not include the day-by-day duties and rights which adhere to the parent who retains custody of a minor child. When the right of discipline and family association has been surrendered, a rule intended to preserve their integrity is not applicable. In this case, that area is the right to comfort and support from plaintiff's mother which she acquired through the changed domestic circumstances necessitated by the divorce and the duties of the mother as the custodial parent and head of the family unit of which the child was a part.

By the foregoing statements and observations, we do not intend in any way to denigrate the position or role of the noncustodial parent to the child. The instant case is one which clearly demonstrates the benefit that inures to both when a good relationship is maintained after divorce. We are also cognizant of the fact that a noncustodial parent must perform parental duties of care, discipline, etc., when the child is in that parent's temporary custody, and that the relative rights and duties of the parties may result in a modification or denial of recovery when the injury arises out of the performance of such duties. Those matters will have to be adjudicated on a case-by-case basis.

Nevertheless, immunity from suit in tort deprives an injured party of a particular remedy and therefore should not be extended beyond the point of that which is necessary to assist and support the functioning of an existing family unit.

■ The court holds that where the mother and father have been divorced the parent does not have the primary, general custody of the unemancipated minor child at the time the tort occurs is not immune from suit in tort by the child. This holding modifies *Bahr v. Bahr, supra,* and to that extent the instant ruling should be followed.

The judgment of the circuit court is reversed and the cause is remanded for trial.

---

8. See, generally, Comment: The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal, 13 San Diego L.Rev. 231 (1975). "[T]here can be little question of the reality of the loss suffered by a child deprived of the society and care of its parent." *Suter v. Leonard,* 43 Cal.App.3d 744, 746, 120 Cal.Rptr. 110, 111 (1975). "Furthermore, the society, education, protection and love of a parent is necessary for the child's welfare and development. The child's loss of his parent's love, society and protection deprives him of the essentials for a healthy development and this results in a real injury to the child. Protection of the child against this type of injury is equally important to the state." Comment, *supra.*

SEILER, J., HIGGINS, Special Judge, and HOUSER, Senior Judge, concur.

DONNELLY, J., concurs in result in separate concurring opinion filed.

MORGAN, C. J., and RENDLEN, J., concur in result and with separate concurring opinion of DONNELLY, J.

SIMEONE and WELLIVER, JJ., not participating because not members of the court when cause was submitted.

DONNELLY, Judge, concurring in result.

On reflection, I think it must be recognized that the opinion in *Bahr v. Bahr*, 478 S.W.2d 400 (Mo.1972), is confusing. It should have explicitly held (1) that the *Hewellette* rule [*Hewellette v. George*, 68 Miss. 703, 9 So. 885] may not effectually apply until evidence is presented, and (2) that the burden is on the defendant to demonstrate that failure to apply the *Hewellette* rule "would seriously disturb the family relations and thus be contrary to public policy."

Having said that, I would not adopt a *per se* rule "that where the mother and father have been divorced the parent who does not have the primary, general custody of the unemancipated minor child at the time the tort occurs is not immune from suit in tort by the child."

After an evidentiary hearing, the trial court found there had been no disruption in the harmonious relationship between defendant and plaintiff because of the filing of this action. In view of this, the case should not have been dismissed.

I concur in result only.