# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 4, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

MARY JEAN BREWER,     )
     )
     Plaintiff/Appellant,     )
     )     Appeal No.
     )     01-A-01-9710-CH-00611
VS.     )
     )     Rutherford Chancery
     )     No. 95DR-493
EDWARD LELON BREWER, JR.,     )
     )
     Defendant/Appellee.     )

APPEALED FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

JERRY SCOTT
JOHN KEA
SCOTT & KEA
110 City Center Building
100 East Vine Street
Murfreesboro, Tennessee 37133-1216
     Attorney for Plaintiff/Appellant

JIM WISEMAN
WISEMAN & SCHNEIDER
131 North Church Street
Murfreesboro, Tennessee 37130
     Attorney for Defendant/Appellee

REVERSED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
CAIN, J.
COTTRELL, J.

# O P I N I O N

This case tests the power of the trial court to order an adult, slightly handicapped child to visit his father. The Chancery Court of Rutherford County held that it was the duty of the court to require the visitation. We hold that under the circumstances of this case the court exceeded its jurisdiction.

## I.

Edward Lelon Brewer, Jr. and Mary Jean Brewer married on August 26, 1972. They had two children, Shaun and Ryan. Both children were adults when the parties divorced on June 3, 1996. Shaun Brewer is borderline to mildly retarded. He continued to live with his mother, and the parties agreed that he needed support beyond the age of eighteen. The marital dissolution agreement provided that Mr. Brewer would pay Ms. Brewer $552 a month as long as Shaun resided in her home as a dependent.

The agreement also provided that Mr. Brewer would have liberal visitation rights with Shaun and that neither party would try to estrange the child from the other or try to hamper the free and natural development of the love and respect of the child for the other party.

In March of 1997 Mr. Brewer filed a petition for contempt alleging that Ms. Brewer had refused to let Shaun visit with him and that she, by various means, had hindered the development of a relationship between Shaun and himself. Although Shaun was not a party, his preference became an issue, and the proof showed that he did not wish to visit his father. Nevertheless, the court set an elaborate visitation schedule upon the following finding:

> In this case, the Court must recognize its duty to provide for the custody of the young man, to require the payment of support, and to require the establishment of a schedule for visitation. The Court appreciates the

desire of Shaun to make his own decisions as to whether he will visit and when he will visit. He must understand, however, that it is the duty of the Court to require him to visit with his father, just as it is the duty of the Court to require Shaun's father to pay child support to Shaun's mother, and to require Shaun's mother to house and care for Shaun as a custodial parent. A part of being a responsible adult is compliance with the law and the orders of the Court. Visitation schedules are arranged in a number of cases where parties have been unable to work out such matters among themselves. The Court must recognize that in order to arrange visitation schedules, particularly in this case, three or more adults must arrange their schedules, which perhaps they have been unable to do consistently. While Shaun has his own schedule, the Court is mindful of the fact that Mrs. Brewer does likewise, and Mr. Brewer does similarly.

The court also declined to hold Ms. Brewer in contempt.

Shaun himself moved for relief from the order and Ms. Brewer filed a notice of appeal. We stayed the appeal to allow the lower court to make Shaun a party, and to rule on his motion for relief from the judgment. The lower court allowed Shaun to intervene, and ordered that he be examined to determine his current mental condition. The court received the examiners' reports, but denied any relief from the order of visitation.

**II.**

Under the common law, children shed the disabilities of minority at age twenty-one. *See* 42 Am. Jur. 2d *Infants* § 3. The age of majority is however, subject to change by the legislature, and in 1971 Tennessee lowered the age of majority to eighteen. The Act provides:

> (a) Notwithstanding any laws to the contrary, any person who is eighteen (18) years of age or older shall have the same rights, duties, and responsibilities as a person who is twenty-one (21) years of age, except as provided in subsection (b) relative to the rights to purchase, possess, transport, and consume alcoholic

- 3 -

> beverages, wine, or beer as those terms are defined in title 57.

Tenn. Code Ann. § 1-3-113(a).

The enactment of this statute completely emancipated those over eighteen years from the control of their parents. *Nichols v. Atnip*, 844 S.W.2d 655, 659 (Tenn. App. 1992). Emancipation occurs even though the child continues to live with his or her parents. *Glover v. Glover*, 319 S.W.2d 238, 243 (Tenn. App. 1958). "[A] person who has reached his majority is entitled to the management of his own affairs and to the enjoyment of civic rights." 42 Am. Jur. 2d *Infants* § 3. Among the rights enjoyed by all adult citizens are the freedom of association, *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the freedom to travel, *Dunn v. Blumstein*, 405 U.S. 330 (1972), and -- in Tennessee, perhaps the most fundamental of all -- the right to be free from governmental interference, the celebrated right to be let alone. *Davis v. Davis*, 842 S.W.2d 588, 599 (Tenn. 1992).

The chancellor sought to avoid those general laws by finding that Shaun was disabled and that Mr. Brewer had a continuing duty of support. Shaun's disability, however, does not prevent him from "making major decisions in his life such as when and under what conditions he would visit with parents or friends," according to one evaluation. Another evaluation found him to have "a relative calm, assured approach to problem-solving; short-term memory and attention; the ability to focus or concentrate; an ability to comprehend and reason out practical or social situations; a sensitivity toward others; an ability to look after his personal needs . . . and appropriate use of manners." He is currently employed and is on a waiting list for acceptance in a group home.

The rights of association to which we have referred may be forfeited by criminal conduct, or regulated to promote a compelling state interest, *Campbell v.*

*Sundquist*, 926 S.W.2d 250, 262 (Tenn. App. 1966), but we know of no authority to support the deprivation of these rights on the basis of "borderline" or "mild" retardation. The only cases we have found on the subject hold to the contrary. In *Schmidt v. Schmidt*, 459 A.2d 421 (Pa. Super. 1983), the Court decided a case involving a victim of Down's Syndrome whose mental age ranged between four and a half and eight. The Court held that an order compelling her to visit her father could not stand against her constitutional rights. The Court said:

> Kimberly Schmidt is chronologically an adult. She has not been adjudicated incompetent. Her mental limitations do not compel the conclusion that she lacks capacity to make rational decisions regarding parental preferences. Because she is an adult she enjoys many of the same rights and privileges enjoyed by other adult citizens. These include a constitutionally protected freedom of choice to make certain basic decisions regarding marriage, procreation, family life and privacy. See, e.g.: Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). This freedom of choice, it would seem, should include the same right which an adult has to refuse to visit a parent. In the absence of an adjudication of incompetency, a handicapped adult should not be deprived of the freedom to make for himself or herself the same family related decisions which other adults enjoy. Such a person has the same needs as other adults for social approval, respect and privacy, as well as freedom to make important decisions regarding personal preferences and associates.

459 A.2d at 422-23. *See also*, *Walker v. Walker*, 523 A.2d 782 (Pa. Super. 1987).

We agree with the Pennsylvania Court's assessment of the rights of adults -- even mildly retarded adults -- to make choices about their associations. We do not mean, however, to place too much emphasis on the effect of an adjudication of incompetency. The appointment of a conservator or a personal representative might be made for any number of reasons that do not go to the individual's right to have his choices respected. *See* Title 34, Tenn. Code Ann. Such an adjudication

would only be one factor to consider in deciding whether an adult had lost the fundamental right to be let alone.

Finally, the argument is made that Mr. Brewer's right to have Shaun visit him is derived from Mr. Brewer's payment of child support. Mr. Brewer, however, voluntarily assumed that obligation in the marital dissolution agreement, and we know of no authority establishing a linkage between the obligation to support an adult child and the right to invoke the power of the state to force an adult child to visit the obligor parent. Again, the only cases dealing with the subject seem to run against any such linkage. *See Fernald v. Fernald*, 302 A.2d 470 (Pa. Super. 1973) and *Schmidt v. Schmidt*, 459 A.2d 421 (Pa. Super. 1983)

### III.

Ms. Brewer also asserts that the lower court's order placed impermissible burdens on her. Since we have held that the court did not have the power to order Shaun to visit his father, the burdens of which she complains have been considerably mitigated. We take no position on the remaining parts of the lower court's order.

The judgment of the court below ordering Shaun Brewer to visit with his father is reversed. Remand the cause to the Chancery Court of Rutherford County for further proceedings. Tax the costs on appeal to the appellee.

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

- 6 -

CONCUR:

_____
WILLIAM B. CAIN, JUDGE


_____
PATRICIA J. COTTRELL, JUDGE