DR. & MRS. WENTWORTH S. )
MORRIS )
and )
MARY  MAURICIA MORRIS, )
)
     Plaintiffs/Appellants, )     Appeal No.    **July 20, 1999**
)     01-A-01-9809-BC-00468
v. )         **Cecil Crowson, Jr.**
)         **Appellate Court Clerk**
)     Tennessee Claims Comm.
STATE OF TENNESSEE, )     Nos. 101452 and 101807
)
     Defendant/Appellee. )

**FILED**

July 20, 1999

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE TENNESSEE CLAIMS COMMISSION FOR

DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

HELEN LOFTIN CORNELL
3635 Woodmont Boulevard
Nashville, Tennessee  37215
    ATTORNEY FOR PLAINTIFFS/APPELLANTS

JOHN KNOX WALKUP
Attorney General & Reporter

MICHAEL E. MOORE
Solicitor General

MEREDITH DEVAULT
Civil Rights and Claims Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, Tennessee  37243
    ATTORNEYS FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case involves the claims of a husband and wife and their adult daughter who were all three living together in one home. Following an incident involving the discharge of a firearm, the adult daughter was arrested and delivered to Middle Tennessee Mental Health Institute ("MTMHI") for forensic examination to determine her competence to stand trial. After her release from MTMHI, the daughter filed claim with the Tennessee Claims Commission alleging rape, unlawful confinement, physical abuse and drug abuse. The parents likewise filed claim with the Claims Commission alleging loss of companionship, society and services, together with medical and other expenses relative to their adult daughter. Almost seven years later, the Claims Commission granted summary judgment to the State on the claims of the parents and dismissed with prejudice, under Rule 41(.02), the claim of the daughter for failure to prosecute her claim and failure to comply with discovery requirements. All the claimants have appealed to this court where we affirm the judgment of the trial court in all respects.

I. FACTS

Dr. Wentworth S. Morris, a retired professor from Austin Peay State University, lived with his wife, Mary Eva Morris, and adult daughter, Mary Mauricia Morris, in Clarksville, Tennessee. Mary Mauricia Morris, who was born September 19, 1962, attained a Bachelor's Degree in Mass Communications from Austin Peay State University. While living with her parents, Mary Mauricia worked at Wal-Mart, The Record Bar and Radio Station WJZM.

In August of 1990, Mary Mauricia Morris was standing in the yard of her home with her mother when two motorcyclists drove into their driveway. She fired two shots into the air and was shortly thereafter arrested and charged with reckless endangerment and unlawful possession of a firearm. On August 24, 1990, following the gunfire incident, Mary Mauricia was ordered by the court to undergo outpatient forensic testing, and three weeks later an order was entered for a maximum thirty day confinement at MTMHI. Her confinement

should have expired on October 13, 1990, but for some reason she remained in confinement at MTMHI until October 25, 1990.

On August 23, 1991, Mary Mauricia Morris filed her claim with the Division of Claims Administration alleging that she had suffered medical malpractice, assault and rape at the hands of MTMHI employees. Thereafter, Dr. and Mrs. Morris filed their claims alleging loss of companionship, society and services of their adult daughter, together with medical and other expenses. These claims were transferred to the Tennessee Claims Commission and consolidated. On March 2, 1994, based on admission by the defendant, summary judgment was granted on the issue of liability to Mary Mauricia Morris for illegal confinement for the period October 14, 1990 through October 25, 1990. On all other issues her motion for summary judgment was overruled. After voluminous proceedings, on July 28, 1998, the Claims Commission, in an extensive memorandum, disposed of all issues in the consolidated cases by granting the State's motion for summary judgment as to the claims of Dr. and Mrs. Wentworth S. Morris and dismissing the claim of Mary Mauricia Morris under Rule 41.02 of the Tennessee Rules of Civil Procedure for failure to prosecute.

## II.    THE CASE OF DR. AND MRS. WENTWORTH S. MORRIS

Summary judgment having been granted by the Claims Commission, this court on appeal cannot weigh the evidence but must require the moving party to demonstrate the absence of any genuine and material factual issue. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). If after considering the facts established by the record and all legitimate inferences to be drawn therefrom in favor of the non-moving party, the court finds that a material issue of fact is presented or if there is doubt as to whether or not such fact issue is presented, this court must vacate the summary judgment. *Evco Corp. v. Ross*, 528 S.W.2d 20, 24-25 (Tenn. 1975).

It is undisputed in this record that at the time this chain of events began Mary Mauricia Morris was an adult college graduate with gainful employment history. The repeated reference to her in the pleadings of this claimant as an

"unemancipated adult child" are meaningless in the absence of evidence. Tennessee Code Annotated section 1-3-113(a) provides:

> Notwithstanding any laws to the contrary, any person who is eighteen (18) years of age or older shall have the same rights, duties, and responsibilities as a person who is twenty-one (21) years of age, except as provided in subsection (b) relative to the rights to purchase, possess, transport, and consume alcoholic beverages, wine, or beer as those terms are defined in title 57.

Emancipation may occur by operation of law. *Glover v. Glover*, 44 Tenn. App. 712, 720, 319 S.W.2d 238, 241 (1958). The enactment of Tennessee Code Annotated section 1-3-113(a) completely emancipated those over eighteen years of age from the control of their parents. *Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972). Accordingly, Mary Mauricia Morris became completely emancipated when she became eighteen years old, even though she continued to live in her parents' home. *Glover v. Glover*, 44 Tenn. App. at 725, 319 S.W.2d at 243 (noting that complete emancipation can occur even though the child continues to live with his or her parents). Where emancipation of a minor is complete, the parent's right to maintain action for loss of services due to injuries is cut off. *Memphis Steel Constr. Co. v. Lister*, 138 Tenn. 307, 197 S.W. 902 (Tenn. 1917).

There is no evidence in this record that Mary Mauricia Morris was diseased or disabled at the time she reached her majority. Case law exists which, under such circumstances, would make Dr. and Mrs. Morris responsible for her upkeep and perhaps give them a corresponding right to recover for medical expenses and loss of society and services. *See Sayne v. Sayne*, 39 Tenn. App. 422, 284 S.W.2d 309 (1955) (finding that a twenty-seven year old daughter who had been disabled since childhood and lived in the parental home was not emancipated such that the court could order her father to pay child support). Indeed, the only evidence in this record consistent with non-emancipation is the fact that Mary Mauricia Morris continued to live in the home of her parents. This is insufficient to establish non-emancipation. *Glover v. Glover*, 44 Tenn. App. at 725, 319 S.W.2d at 243.

Claimant relies on *Roddy Manufacturing Co. v. Dixon,* 21 Tenn. App. 81, 105 S.W.2d 513 (1936), to support her position. That case involved the loss of services of a 19 year old son impaired by tort injury and thus limited in his ability to perform farm labor on his father's farm. The son was 19 years of age at the time when the law provided that emancipation by attainment of majority did not occur until age 21. Chapter 162 of the Public Acts of 1971, codified in part in section 1-3-113(a) of the Tennessee Code, reduced the age at which one reached majority from age 21 to age 18. In August 1990, Mary Mauricia Morris was 28 years of age, well past the age of majority.

> It is fundamental that once a child reaches the age of majority there is a complete emancipation of the minor from the protective bonds of parental control. At the time of complete emancipation the parents' legal duty to support the child is terminated.
>
> In Section 3 of Chapter 162 of the Public Acts of 1971 the General Assembly has conferred the status of adulthood on persons 18 years of age or older. By lowering the age of majority from 21 to 18 years of age the Legislature has completely emancipated the minor from the control of the parents and relieved the parents of their attendant legal duty to support the child.

*Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972) (citations omitted).

To the extent that the complaint of Dr. and Mrs. Morris seeks recovery for loss of society and companionship of an adult child, we find that there is no basis for such an action. While a growing minority of sister jurisdictions seem to recognize such a cause of action, *Howard Frank, M.D., P.C. v. Superior Court*, 722 P.2d 955 (Ariz. 1986); *Masaki v. General Motors Corp.*, 780 P.2d 566 (Hawaii 1989), the majority rule does not recognize such an action. *Boucher v. Dixie Med. Ctr.*, 850 P.2d 1179 (Utah 1992). The majority rule is grounded in public policy and was well stated by the Wisconsin Supreme Court in *Estate of Wells v. Mount Sinai Medical Center* in a context similar to the case at bar. The issue in *Wells* was whether a parent can recover for loss of society and companionship of an adult child whose injuries allegedly resulted from medical malpractice. Citing *Hass v. Chicago & North Western Railway Co.*, 179 N.W.2d 885, 888 (Wis. 1970), the court in *Wells* stated:

> It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tortfeasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too 'wholly out of proportion to the culpability of the negligent tort-feasor,' or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden [on negligent tort-feasors], or be too likely to open the way for fraudulent claims, or would 'enter a field that has no sensible or just stopping point.'

*Estate of Wells v. Mount Sinai Med. Ctr,* 515 N.W.2d 705 (Wis. 1994) (quoting *Hass*, 179 N.W.2d at 888) (quoting *Colla v. Mandella*, 85 N.W.2d 345 (Wis. 1957)). No Tennessee case has recognized a parental cause of action for loss of society and companionship of an emancipated adult child. The majority rule in sister jurisdictions is persuasive that no such cause of action is viable.

The evidence in the case, primarily the deposition of Dr. Morris, clearly shows that neither he nor his wife Mary Eva Morris, knew anything first hand about what happened to Mary Mauricia Morris while she was at MTMHI. No evidence in the record approaches the serious emotional injury required to effect recovery under *Ramsey v. Beavers*, 931 S.W.2d 527 (Tenn. 1996). The undisputed facts and conclusions to be drawn from those facts in this case would permit a reasonable person to reach only one conclusion. Dr. and Mrs. Morris cannot prevail as a matter of law in any of their claims before the Claims Commission in this case. Summary judgment was properly granted. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

III.    THE CASE OF MARY MAURICIA MORRIS

Rule 41.02 of the Tennessee Rules of Civil Procedure is a mirror image of the federal rule. This being true, federal authorities provide helpful guidance in our interpretation of the Tennessee rule. *Andrews v. Bible*, 812 S.W.2d 284, 287 (Tenn. 1991); *Bowman v. Henard*, 547 S.W.2d 527, 530 (Tenn. 1977). Rule 41.02 provides in pertinent part:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits.

Tenn. R. Civ. P. 41.02(3). While an involuntary dismissal with prejudice is reviewed on appeal under an abuse of discretion standard, *Link v. Wabash Ry. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), it is likewise true that dismissal with prejudice should be done sparingly. *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978).

The following chronology of events in the Claims Commission is indispensable in determining if the Claims Commission's action of involuntary dismissal with prejudice was an abuse of discretion:

1.    The claimants filed claim with the Division of Claims Administration on August 23, 1991 alleging negligence, medical malpractice, assault, battery and intentional infliction of emotional distress.

2.    This claim was transferred to the Tennessee Claims Commission on December 2, 1991 in accordance with Tennessee Code Annotated section 9-8-402 (c).

3.    The claimants filed a joint complaint with the Tennessee Claims Commission on March 3, 1992.

4.    Defendant denied the allegations of the complaint on June 23, 1992.

5.    On motion of the claimants, a trial date was set for April 23, 1993.

6.    The Commission continued the trial because of failure of the claimant, Mary Mauricia Morris, to respond to interrogatories.

7.    On November 22, 1993, the claimants filed a motion for summary judgment.

8.    On March 2, 1994, Commissioner Murray granted partial summary judgment, holding that Mary Mauricia Morris had been improperly confined for the period October 14, 1990 through October 25, 1990. In all other respects, the motion for summary judgment by the claimants was denied.

9.    Following a number of motions essentially unrelated to the controlling question, Commissioner Baker, by order entered May 28, 1996, ordered that the deposition of Mary Mauricia Morris be taken by the defendant on July 24, 1996 at 10:00 a.m.

10.    The deposition did not take place and Commissioner Baker ordered her to appear for deposition on November 12, 1996.

11. On November 8, 1996, a subpoena was issued by the Administrative Clerk of the Tennessee Claims Commission requiring Mary Mauricia Morris to appear for her scheduled deposition on November 12, 1996.

12. This subpoena was served upon claimant by her own attorney, Helen Cornell, on November 11, 1996.

13. Mary Mauricia Morris failed to appear for her deposition either on November 12 or November 13, 1996.

14. On November 15, 1996, defendant noticed Mary Mauricia Morris and her mother Mary Eva Morris to appear for depositions on December 10, 1996.

15. Once again, the deposition did not take place and on December 13, 1996, defendant filed a motion to dismiss Mary Mauricia Morris' claim for failure to cooperate in discovery.

16. On January 31, 1997, counsel for Mary Mauricia Morris filed her own affidavit, along with the affidavit of her paralegal, Carey Hambrick, Jr., relative to their efforts to get Mary Mauricia Morris to appear for the November 12, 1996 deposition. The affidavit of Hambrick provides:

> 1. I am a paralegal in the law office of Helen Cornell, Attorney.
> 2. On November 10, 1996 I went with Ms. Cornell to Clarksville to the Montgomery County Sheriff's Department and to the residence of Mary Mauricia Morris at Vacation Motor Hotel in Clarksville, attempting to serve a subpoena upon M[s]. Morris for her presence at her deposition on November 12, 1996.
> 3. On November 10th Ms. Cornell requested sheriff service of this subpoena. She further put a copy of the subpoena under M[s]. Morris' door and she left a copy of the subpoena in the door of the law office of Stacey Turner, the criminal defense attorney for Mary Mauricia Morris.
> 4. On November 12, 1996 I went with Ms. Cornell to the residence of Mary Mauricia Morris at Vacation Motor Hotel, offering to transport Ms. Morris to the Deposition.
> 5. We further asked Ms. Stacey Turner at the Montgomery County Courthouse to call M[s]. Morris or to bring Ms. Morris to the deposition, all of which Ms. Turner refused to do.
> 6. Every effort was made by Ms. Cornell and me to secure Claimant Mary Morris' presence at the deposition.
> 7. In addition, Ms. Cornell and I picked up Dr. and Mrs. Morris in Indian Mound, Tennessee and took them to their depositions on November 13, 1996 and returned them to their home in Indian Mound.

17.    Oral argument on all pending motions was heard January 31, 1997, and on February 18, 1997, the Commissioner entered an order providing in part as follows: "[i]t is ordered that Mary Mauricia Morris will be given two more chances to appear for her deposition, that the defendant subpoena Mary Mauricia Morris to appear for her deposition on February 24, 1997 and February 25, 1997 at 10:00 a.m. at Austin Peay State University in Clarksville, Tennessee."

18.    On February 25, 1997, Commissioner Baker appeared with counsel for the parties for the scheduled deposition of Mary Mauricia Morris. She once again failed to appear and the Commissioner by order of March 5, 1997 held that Helen Cornell no longer represented Mary Mauricia Morris and that the Administrative Clerk for the Tennessee Claims Commission should send a copy of the order directing Mary Mauricia Morris to respond to the court within thirty days and that her failure to do so would indicate to the court that she had abandoned her claim and would constitute grounds for the State to move for dismissal of her lawsuit on the basis of her abandonment of the claim.

19.    No response was forthcoming from Mary Mauricia Morris and on April 16, 1997, defendant moved to dismiss the claim of Mary Mauricia Morris under Rule 41.02(1) for failure to prosecute.

20.    Finally, on October 23, 1997, Commissioner Baker dismissed her claim under Rule 41.02(1) for failure to prosecute.

21.    On November 18, 1997, the claimant filed a motion under Rule 52.02 and Rule 59.04 asking the Commission to amend its findings of fact and make additional findings, and also to alter or amend its judgment. This was accompanied by a Rule 60 motion to reinstate the partial summary judgment on liability issued by Commissioner Murray on February 28, 1994.

22.    On July 28, 1998, Commissioner Baker overruled all motions pending and from this order claimants appeal.


The patience and restraint of the Commissioner in this case is commendable. It is difficult to imagine how he could have been more lenient with the totally unexplained refusal of Mary Mauricia Morris to pursue her own claim. She refused to appear for depositions even after her own lawyer served a proper subpoena on her to appear. By any analysis associated with logic, she

9

has deliberately failed and refused to prosecute her claim. Like any other party, she is required to submit to discovery and it is her obligation to timely pursue her own claim.

The belated effort by her counsel to resurrect the case because of the partial summary judgment granted in 1994 by Commissioner Murray is of no avail. Damages are an indispensable element of a tort claim and it was her duty to prosecute this part of her claim to its conclusion just as it was her duty to pursue all other elements of her claim upon which summary judgment was not granted. "As to the Plaintiff's insistence that the jury was required to return a verdict of at least nominal damages for loss of consortium, we note that in negligence cases wherein damages are an element of the right to recover, nominal damages are never proper." *Skoretz v. Cowden*, 707 S.W.2d 529, 532 (Tenn. App. 1985).

The action of the Commissioner in dismissing the claim of Mary Mauricia Morris with prejudice under Rule 41.02(1) is certainly not an abuse of discretion under the facts of this case. *See Hutchins v. A. G. Edwards & Sons, Inc.*, 116 F.3d 1256 (8th Cir. 1997); *Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996); *Dorsey v. Scott Wetzel Servs., Inc.*, 84 F.3d 170 (5th Cir. 1996); *Morgan v. City of Marmaduke*, 958 F.2d 207 (8th Cir. 1992); *Woods v. Union Pacific R.R. Co.*, 957 F.2d 548 (8th Cir. 1992); *Figueroa v. Alegria*, 896 F.2d 645 (1st Cir. 1990). The judgment of the Claims Commission is in all respects affirmed with costs assessed jointly against the claimants.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____

WILLIAM C. KOCH, JR., JUDGE