SWANSON, Appellant,

v.

SWANSON, n.k.a. Berger, Appellee.

[Cite as *Swanson v. Swanson* (1996), 109 Ohio App.3d 231.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 95–CA–0057.

Decided Feb. 9, 1996.

*J. Timothy Campbell,* for appellant.

*J. Andrew Root,* for appellee.

---

GRADY, Judge.

Roger L. Swanson ("Swanson") appeals from an order requiring him to continue to pay child support for the benefit of his daughter, Andrea, who reached her age of majority on October 28, 1992, until she completed her high school education in June 1994.

The marriage of Swanson and Martha P. Swanson, now known as Martha Berger ("Berger"), was terminated by decree of dissolution in 1983. By their agreement, their four minor children were placed in their joint custody.

Subsequently, on July 2, 1987, Berger moved for sole custody of Andrea. The matter was submitted to a referee, who on October 29, 1987, recommended that the motion be granted and that Swanson be ordered to pay $65 per week, plus poundage, for Andrea's support. The record does not reflect an order of the court adopting the referee's recommendation. However, on October 29, 1987, the court ordered Swanson's employer to withhold $66.30 per week, plus poundage, from his salary and to forward it to the Bureau of Support. That order appears to be for the benefit of Andrea, rather than for the benefit of other children of the marriage who at the same general time were the subject of similar change of custody and child support requests.

In 1994, the court was asked to determine when support for Andrea should be terminated. The court held that the proper date for termination was at the end of June 1994, the month of her high school graduation. Because amounts then in the hands of the Child Support Enforcement Agency were sufficient to pay that obligation, the sum of $120.45 was refunded to Swanson. He filed a timely notice of appeal from that order and now presents four assignments of error.

First Assignment of Error

"Section 3109.05(E) [*sic*] is prospective in nature and does not apply to child support orders issued prior to its effective date and cannot be retroactively applied. Consequently, Andrea Swanson was emancipated on October 29, 1992 when she was eighteen years of age, and the appellant's support should have terminated on October 28, 1992."

R.C. 3109.01 provides that the age of majority in Ohio is eighteen years of age. In ordering support continued past Andrea's eighteenth birthday and through her graduation from high school, the trial court relied on R.C. 3109.05(E), which states:

"Notwithstanding section 3109.01 of the Revised Code, if a court issues a child support order under this section, the order shall remain in effect beyond the child's eighteenth birthday as long as the child continuously attends on a full-time basis any recognized and accredited high school. Any parent ordered to pay support under a child support order issued under this section shall continue to pay support under the order, including during seasonal vacation periods, until the order terminates."

Swanson argues that the statute is retroactive as applied to him because it was enacted in 1993, subsequent to the 1987 child support order to which it applies.

Section 28, Article II, Ohio Constitution provides that the General Assembly shall have no power to pass retroactive laws. Every statute which takes

away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past is unconstitutionally retroactive. *Rairden v. Holden* (1864), 15 Ohio St. 207; *Gompf v. Wolfinger* (1902), 67 Ohio St. 144, 65 N.E. 878; *Weil v. Taxicabs of Cincinnati* (1942), 139 Ohio St. 198, 22 O.O. 205, 39 N.E.2d 148. Unless a statute comes within the terms of that definition, it is not prohibited by Section 28, Article II.

■ There is no vested right to a particular remedy, and it is well established that the constitutional prohibition against the enactment of retroactive laws does not apply to remedial legislation. *State ex rel. Slaughter v. Indus. Comm.* (1937), 132 Ohio St. 537, 8 O.O. 531, 9 N.E.2d 505. The constitutional prohibitions of Section 28, Article II apply only to laws disturbing accrued substantive rights. *Id.*

Swanson's argument that R.C. 3109.05(E) is unconstitutionally retroactive as it applies to him lacks merit, for two reasons.

■ First, R.C. 3109.05(E) is remedial, not substantive. It merely provides a remedy for enforcement of the duty of a father to support his minor children established in R.C. 3103.03 by extending the jurisdiction of the court to order the relief provided by the statute past the time when it formerly terminated, at the age of majority. See *Josh v. Josh* (1929), 120 Ohio St. 151, 165 N.E. 717. R.C. 3109.05(E) imposes no new duty and it impairs no right that vested in obligor to have support terminated at the age of majority.

■ Second, the extension required by R.C. 3109.05(E) does not operate retroactively as to Swanson. The version of R.C. 3103.03 in effect when his support order was entered in 1987 provided, *inter alia:*

"Notwithstanding section 3109.01 of the Revised Code, the parental duty of support to children shall continue so long as the child continuously attends on a full-time basis any recognized and accredited high school, even when such child has attained the age of majority. Such duty of support shall continue during seasonal vacation periods."

Therefore, the obligation imposed on Swanson in 1987 extended until Andrea graduated from high school, and the remedy created by R.C. 3109.05(E) does not add to his obligation to deprive him of any benefit to which he was formerly entitled.

The first assignment of error is overruled.

Second Assignment of Error

"The court erred in determining that Andrea Swanson's emancipation was in June of 1994 when she formally graduated from high school, and erred in finding

that petitioner/plaintiff/appellant's child support should have terminated in June of 1994."

Emancipation, in this context, is the entire surrender by a parent of the right to the care, custody, and earnings of a minor child as well as the renunciation of parental duties. *Glover v. Glover* (1958), 44 Tenn.App. 712, 319 S.W.2d 238. Emancipation discharges the parent from an obligation to support the minor child, but only so long as the minor child is competent to support himself or herself. *Hoffmann v. Hoffmann* (1972), 32 Ohio App.2d 186, 61 O.O.2d 205, 289 N.E.2d 397; *Ford v. Ford* (1959), 109 Ohio App. 495, 12 O.O.2d 67, 167 N.E.2d 787.

Whether a child has become emancipated depends on the particular facts and circumstances involved. *Price v. Price* (1983), 12 Ohio App.3d 42, 12 OBR 129, 465 N.E.2d 922. Marriage of a minor child is an act of emancipation that will terminate the obligations of a domestic relations order as a matter of law. *Perry v. Perry* (App.1936), 21 Ohio Law Abs. 577. However, the minor's employment does not terminate the support obligation as a matter of law, and the mere capability of a minor child to earn money on his or her own behalf is no ground for termination or reduction of a child support order. *Schirtzinger v. Schirtzinger* (1952), 95 Ohio App. 31, 52 O.O. 372, 117 N.E.2d 42.

From the foregoing discussion is it evident that emancipation applies only to minor children. Therefore, to the extent that emancipation operates to relieve a parent of a duty of support it does so only with respect to the parent's duty to support a *minor* child. Emancipation is irrelevant to any duty of support that may exist after the child reaches the age of majority, including the particular duty imposed on a parent by R.C. 3109.05(E) and other sections of the Revised Code to continue to support a child who is enrolled in high school on a full-time basis.

Swanson argues that R.C. 3109.05(E) might permit a child who is otherwise emancipated to "continue in high school for twenty years after attaining age eighteen and still require the obligor to make support payments." We believe that is most unlikely. Accredited high schools, to which R.C. 3109.05(E) applies, generally have carefully controlled requirements for attendance and curriculum which make the prospect raised by Swanson's argument extremely remote. In any case, it is not demonstrated by this record.

The second assignment of error is overruled.

Third Assignment of Error

"The court erred in failing to find that Andrea Swanson was emancipated in June of 1993, when she had all of the necessary requirements to graduate from

high school, but voluntarily decided to attend an extra year of high school, and further erred in failing to find that the petitioner/plaintiff/appellant's child support should have terminated in June of 1993."

 Andrea could have graduated from high school after four years, in June 1993. She elected to attend high school for a fifth year, until June 1994, in order to earn credits for her cosmetology degree. Whether that was a reasonable choice under the circumstances implicates a "best interests of the child" standard, which is committed to the sound discretion of the trial court. In that event, our inquiry is limited to determining whether an abuse of discretion has occurred. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 9 OBR 529, 459 N.E.2d 896. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. We find no such abuse.

Andrea testified that she elected to continue her high school education at the Greene County Career Center for a fifth year, though she had sufficient credits to graduate after her fourth year, in order to obtain her cosmetologist's license. She conceded that she could have attended a proprietary school for that purpose, but attended the Career Center to save money. Andrea testified that she had discussed her plan to attend school for a fifth year with her father. Swanson did not deny that she did, but testified that he was then unaware that Andrea could have graduated from high school a year earlier.

We find no abuse of discretion. Andrea's testimony demonstrates that her fifth year of high school prepared her for a job. In was clearly in her best interests to follow that path, even though other alternatives were available to her.

The third assignment of error is overruled.

Fourth Assignment of Error

"The court erred in failing to find that Andrea Swanson was emancipated in December of 1993 when she moved from her mother's home to the apartment of her boyfriend, and further erred in finding that Andrea Swanson remained dependent upon her mother for living expenses, and further erred in failing to find that the petitioner/plaintiff/appellant's child support obligation should have terminated in December of 1993."

The legal status of emancipation, as we noted before, is irrelevant to the issues with which we are concerned. Rather, we must determine whether the trial court abused its discretion when it continued Swanson's support obligation at the rate of $65 per week through Andrea's entire last year of high school in 1993–1994.

Swanson's total obligation for Andrea's support for the year ended June 1994 was $3,380, plus poundage. Some of the monies were paid to Berger, Andrea's mother, the residential parent and obligee under the 1987 support order. The balance was impounded by the Child Support Enforcement Agency. The trial court ordered the CSEA to pay the impounded amount to Berger, less a small excess to be returned to Swanson.

The record demonstrates that Andrea left Berger's home in December 1993 and moved to Montgomery County to live with her boyfriend. Andrea testified that thereafter she received support from her mother, from her boyfriend, who paid the rent and utilities, and from her own employment.

The trial court found that after Andrea left her mother's home she "remained dependent upon her mother for her living expenses." Swanson points out that during this period Berger gave Andrea only $730.83, much less than the $1,956.50 he was required by the court's order to pay during those seven months.

It appears that the trial court treated the motion before it as a motion to modify Swanson's support obligation and that the court found his motion wanting. The court appears also to have viewed its discretion to modify greatly reduced by R.C. 3109.05(E), which requires that the terms of a prior order "shall remain in effect" while the child attends high school.

When support is paid in accordance with a child support order the courts are reluctant to order a refund to the obligor because of facts and circumstances learned after the support has been paid. To avoid that prospect, support orders should require the obligee to notify the obligor of any change in the circumstances underlying the support order. Certainly, if the child moves out of the obligee's home and a third party assumes the responsibility for the child's support or a large part of it, that is a change of which the obligor should be made aware. Apparently, no such requirement was made here.

Appellate courts should exercise great restraint when asked to reverse or modify child support orders for reasons that are fact-sensitive. That is the case here. Berger testified that she used the monies that she received in child support to pay Andrea's expenses. Andrea testified that she remained dependent on her mother for support after she left her mother's home. Therefore, there is some competent, credible evidence to support the trial court's order, and we will not disturb it.

The fourth assignment of error is overruled.

Having overruled the assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

FREDERICK N. YOUNG, J., concurs.

FAIN, J., concurs separately.

FAIN, Judge, concurring.

I write separately merely to note that the text of R.C. 3109.05(E) may not be consistent with the purposes of the General Assembly in enacting it, as illustrated by the result in this case. I had supposed that the purpose underlying R.C. 3109.05(E), and its predecessor, R.C. 3103.03, was to permit a young person to finish high school before attainment of the new, eighteen-year age of majority results in the termination of the parental support obligation. To that end, the parental support obligation continues as long as the child continues to be a full-time high school student, notwithstanding that the child has reached the age of eighteen. I assume that the General Assembly had in mind that the child would either graduate or drop out, and that until either of those events were to occur, the parental support obligation should continue.

In view of my understanding of the purpose underlying the statute, the accumulation of sufficient credits to graduate should be treated as the functional equivalent of graduation. The child has enjoyed the opportunity to graduate from high school, assuming that the child had the motivation and ability to do so, and it is now time for the child to begin making his or her own way in the world, assuming that the child does not suffer from a disability that would make it impossible to do so. In the case before us, then, Swanson would have no further obligation to support Andrea once she had obtained sufficient credits to graduate, since she had the present opportunity to graduate, but chose, for her own reasons, not to do so.

Although I believe the termination of Swanson's support obligation would be consistent with the General Assembly's purpose in enacting R.C. 3109.05(E) and its statutory predecessor, I cannot reconcile that result with the words used in the statute. As Judge Grady correctly notes in the opinion of this court, the statute provides that the support obligation shall continue as long as the child continuously attends high school on a full-time basis, and Andrea Swanson's situation indisputably fitted that description after she elected to remain a high school student rather than to graduate.

I invite the General Assembly to revisit this subject. Nevertheless, based on the present wording of R.C. 3109.05(E), I concur fully in the reasoning expressed in the opinion of this court.