OPINION
Appellant, Stanley Zajac, appeals from the judgment entry of the Geauga County Court of Common Pleas, Juvenile Division, filed December 11, 2000, denying the following motions filed by appellant on November 8, 2000: "To Stay 10/16/00 Ex Parte Order/Notice to Withhold Child Support;" "Hearing on Order/Notice to Withhold Income for Child Support;" "Prohibit an Award of Arrearages for Child Support Pursuant to O.R.C. § 3111.13 3113.2111, Effective October 27, 2000;" and "Other Relief" (collectively, "the November 8, 2000 motions").
The original complaint in this matter was filed September 25, 1995. Appellee, Carolyn Donovan ("Donovan"), alleged that appellant was the father of her child, appellee, Harmony Donovan ("Harmony"), who was born on October 25, 1977, and sought back child support from the date of Harmony's birth.[1] Appellant ultimately stipulated that he was Harmony's father, and in an August 7, 1996 judgment entry, the trial court determined that appellant owed $75,524.06 in child support arrearages. Appellant appealed that decision to this court, and we reversed and remanded the matter for a new calculation of appellant's child support obligation. State v. Zajac (Dec. 31, 1997), Geauga App. No. 96-G-2006, unreported, 1997 WL 835081 ("Zajac I"). On remand, the trial court determined that appellant owed $54,450.63 in child support. Appellant, once again, appealed the trial court's decision. We affirmed that decision in State v. Zajac (June 23, 2000), Geauga App. No. 98-G-2199, unreported, 2000 WL 816249 ("Zajac II").
In Zajac II, we held that appellant should pay no less than $200 per month commencing on November 1, 1998, and that he should pay the balance of the arrearages by November 1, 2008.
On October 16, 2000, the child support enforcement agency of Geauga County ("CSEA") sent a notice to appellant that $576.30 per month would be withheld from his disability benefits. Appellant responded to this notice by filing the November 8, 2000 motions, which were overruled.
Appellant has filed a timely appeal and makes the following assignment of error:
 "The trial court erred to the prejudice of [appellant] by denying, without a hearing, [the November 8, 2000 motions] for the reasons stated in [appellee's] brief in opposition to [appellant's] motions."
 The first issue raised by appellant is that CSEA failed to send him advance notice of the child support order. Pursuant to R.C. 3113.21(B)(1), when an obligor is in default on a support order, the division of child support in the department of human services must send the obligor an advance notice. The advance notice must contain, among other things, a statement of the date it was sent; the amount of arrearages owed; the types of withholding or deduction requirements; the amount that will be withheld or deducted pursuant to those requirements; and, an explanation of the administrative and court action that will occur if the obligor contests the provisions of the notice. R.C. 3113.21(B)(2)(a).
Once an obligor has received an advance notice, he may request an administrative hearing at which the child support enforcement agency shall determine whether a mistake of fact was made in the advance notice. R.C. 3113.21(B)(3). The obligor may, subsequent to the administrative hearing, file a written motion for a court hearing to determine if a mistake of fact still exists in the advance notice or corrected advance notice. R.C. 3113.21(B)(4). Upon the filing of such a motion, "the court shall hold a hearing * * * as soon as possible * * *." (Emphasis added.) Id.
Appellees contend that appellant's receipt of this court's June 23, 2000 opinion ("the opinion") was sufficient to constitute advance notice.[2] We disagree. That opinion did not contain the information that must be included in an advance notice pursuant to R.C. 3113.21. Further, even if the opinion did constitute an advance notice, R.C.3113.21(B)(4) requires the trial court to hold a hearing if the obligor files a written motion to determine if a mistake of fact exists in the advance notice. In the instant case, in the absence of an advance notice and the opportunity to request an administrative hearing with the child support enforcement agency, appellant's request for a hearing by the trial court should have been honored.
We also agree with appellant that the amount withheld from appellant's disability benefits should have been determined by the trial court and not by CSEA. While the opinion contained general guidelines as far as appellant's monthly obligation, we did not determine the precise amount to be withheld from appellant's disability benefits. We held that appellant owed appellee $54,450.63, that he had to pay no less than $200 per month, and that he should pay the balance of the support no later than November 1, 2008. Using those parameters, the trial court should have calculated appellant's payment schedule. R.C. 3113.21(A)(1) states that "[t]he court shall determine the specific withholding or deduction requirements or other appropriate requirements applicable to the obligor under the support order * * *." While we appreciate the difficulties and frustrations of the trial court in its efforts to bring this case to a state of finality, its opinion did not meet the level of specificity required by R.C. 3113.21(A)(1).
Appellant also argues that he should not have to pay child support arrearages because he did not know that Harmony was his child until 1995, when she was almost eighteen years old. Appellant's argument is completely devoid of merit.
In support of his proposition that he should not have to pay arrearages, appellant relies on R.C. 3111.13(F)(3)(a), which states that a court will not require a parent to pay for failure to support a child prior to the date the court issues a child support order, if "(i) [a]t the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age" and "(ii) [p]rior to the initial filing of [the] action * * *, the alleged father had no knowledge and had no reason tohave knowledge of his alleged paternity of the child." (Emphasis added.)
This statute was not effective until October 27, 2000; however, the legislature apparently desired it to have retroactive application since R.C. 3111.13(F)(3)(c) states that "[a] party is entitled to obtain modification of an existing order for arrearages under this division regardless of whether the judgment * * * from which relief is sought was issued prior to, on, or after October 27, 2000." The explicit retroactivity of this legislation has constitutional implications, but before addressing the constitutionality of the statute, we would note that the fact pattern at hand denies appellant the benefit of this legislation.
Harmony was born in 1977. Appellant has admitted that he was arrested on a bastardy complaint in either 1977 or 1978 based on allegations by Donovan that he was Harmony's father. We are baffled as to how appellant can now assert that he had no reason to have knowledge that he was Harmony's father prior to 1980, when Harmony reached the age of three. In view of appellant's arrest on a bastardy complaint within a year of Harmony's birth, we conclude that the case sub judice does not fall within the ambit of R.C. 3111.13(F)(3)(a). Therefore, we find no merit in appellant's contention that he should not have to pay child support arrearages.
Although neither party has raised the constitutionality of the retroactive application of R.C. 3113.13, we are mindful of certain considerations that could be raised if such a challenge arose. Section28, Article II of the Ohio Constitution prohibits the enactment of retroactive legislation. The test for unconstitutional retroactivity requires two separate determinations: (1) whether the General Assembly intended the statute to apply retroactively, and (2) whether the law is substantive or remedial. State ex rel. Kilbane v. The Indus. Comm. ofOhio (2001), 91 Ohio St.3d 258, 259. The prohibition against retroactive legislation applies only to acts, which create and define substantive rights. Id.
A statute is substantive when it "impairs or takes away vested rights."Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107. Remedial laws are those which "merely substitute a new or more appropriate remedy for the enforcement of an existing right." Id. In the case sub judice, it could be contended that the retroactive application of R.C. 3111.13(F)(3), would impair a child's right to be supported by her parent, a right recognized by the Supreme Court of Ohio in State v.Collins (2000), 89 Ohio St.3d 524, 534. Therefore, a prospective constitutional challenge involving a fact pattern similar to this case would undoubtedly focus on whether R.C. 3111.13(F)(3) is substantive in nature and, consequently, unconstitutional if retroactively applied.[3]
Again, we would emphasize that regardless of the constitutionality of the retroactive application of R.C. 3111.13(F)(3), the factual situation presented by appellant places him outside the scope of that particular statutory section.
For the reasons stated in this opinion, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is reversed, and this matter is remanded for a determination, with specificity, of appellant's child support obligations.
PRESIDING JUDGE DONALD R. FORD, CHRISTLEY, J., GRENDELL, J., concur.
[1] Donovan and Harmony will collectively be referred to as "appellees" in this opinion.
[2] Appellee refers to a June 26, 2000 order. We presume that appellee is referring to our June 23, 2000 opinion, Zajac II.
[3] In Swanson v. Swanson (1996), 109 Ohio App.3d 231, 235, the Second Appellate District held that R.C. 3109.05(E), which requires a parent to continue to pay support beyond the child's eighteenth birthday as long as the child continuously attends high school on a full-time basis was a remedial statute. The court concluded that a parent did not have a vested right to have support terminated at the age of majority. We believe that the instant case is readily distinguishable since the child
does have a vested right to the support of the parent.