IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2003 Session

## SALLY ANNE NIGRO v. VINCENT JOHN NIGRO

**Appeal from the Circuit Court for Williamson County**
**No. II-98294     Donald P. Harris, Judge**

---

**No. M2002-00134-COA-R3-CV - Filed July 11, 2003**

---

In this divorce case the husband appeals the grant of the divorce to the wife, the division of the marital property, the award of alimony to the wife, the trial court's failure to make the wife pay child support, and its failure to allow the husband to relocate out of the state with the son. For her part, the wife seeks a larger portion of the husband's retirement pay and the proceeds of the marital home. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. PATRICIA J. COTTRELL, J., not participating.

Nicholas D. Hare, Nashville, Tennessee, for the appellant, Vincent John Nigro.

Joanie L. Abernathy, Franklin, Tennessee, for the appellee, Sally Anne Nigro.

## OPINION

### I.
#### MARRIAGE AND SEPARATION

Vincent and Sally Nigro married in 1981. Mr. Nigro graduated from the Naval Academy in 1973. He retired from the military in 1995. Ms. Nigro is a teacher. The parties moved frequently during the marriage, but at each station Ms. Nigro managed to find a job and earn an income. They have two sons. The oldest was eighteen at the time of the trial and in his senior year of high school. He stayed with his mother after the separation. The youngest son was fifteen and he elected to stay with his father.

Both parties had some assets at the time of their marriage, and they accumulated a modest estate before they separated. They continued to work after the separation, although at the time of the trial Mr. Nigro had lost his job as a ROTC instructor in the Williamson County School System.

Ms. Nigro filed for divorce in May of 1998. After that date, the record is a blur of motions, amended pleadings, orders substituting counsel, and orders dealing with the procedural posture of the case. Despite all the smoke and noise, the cause finally came on to be heard on January 25, 2000. At the beginning of the trial, the court granted Ms. Nigro's motions in limine (1) preventing Mr. Nigro from testifying about Ms. Nigro's fault because he had not filed a counter-claim and had not raised her ill conduct as a defense, and (2) preventing Mr. Nigro from offering any evidence at all at the trial because he had failed to appear for his discovery deposition. After the hearing the court granted Ms. Nigro a divorce, awarded custody of the children to her, divided the marital property, and ordered Mr. Nigro to pay alimony in futuro.

Mr. Nigro moved for a new trial or in the alternative to alter or amend. On April 24, 2000 the trial judge granted Mr. Nigro a new trial on all issues except for the divorce and the award of attorney's fees to Ms. Nigro. After several more rounds of motions, contempt petitions, and substituted counsel, the remaining issues were tried before a different judge on August 9 and 10, 2001. This hearing resulted in the final decree which is the primary subject of the appeal before us.

## II.
### THE DIVORCE

Mr. Nigro also contests the award of the divorce to Ms. Nigro after the hearing on January 25, 2000 at which he could not testify. His grounds for reversing the award of the divorce are two-fold: he contends that the sanction disallowing his own testimony was too harsh, and that Ms. Nigro did not prove grounds that would entitle her to a divorce.

Mr. Nigro does not cite any authority for his position that the trial judge erred in not allowing him to testify at the January 2000 hearing. We note that Rule 37.04, Tenn. R. Civ. P., authorizes a trial judge to "make such orders in regard to the failure as are just" when a party fails to appear for his deposition. The range of sanctions for failure to cooperate in discovery includes dismissal of the complaint, *Hodges v. Tennessee Attorney General*, 43 S.W.2d 918 (Tenn. Ct. App. 2000); *Morris v. State*, 21 S.W.3d 196 (Tenn. Ct. App. 1999); granting a default judgment, *Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Dev. Venture*, 828 S.W.2d 412 (Tenn. Ct. App. 1991); and refusing to allow the witness to testify at trial, *Strickland v. Strickland*, 618 S.W.2d 496 (Tenn. Ct. App. 1981). The trial judge's discretion in imposing sanctions for discovery misconduct will not be disturbed in the absence of an affirmative showing of abuse. *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984). Mr. Nigro does not show why it was an abuse of discretion for the trial judge to disallow his testimony; therefore we affirm the trial judge's order.

We also note that Mr. Nigro does not tell us what his testimony would have been or how it would have changed the result of the first hearing. Tennessee Rules of Evidence 103 provides that

an order excluding evidence will not be a ground for error unless a substantial right is affected and the substance of the evidence is made known to the court. Since the court granted a new trial on all the issues decided after that January 2000 hearing except for the divorce and the wife's attorney's fees, we would need to know what Mr. Nigro would have said at the trial that would have had a bearing on these issues. Since we do not have the benefit of that evidence, any relief based on its exclusion is precluded by Rule 103.

As to the grounds for the divorce, Ms. Nigro proved that Mr. Nigro had a volatile temper and vented his anger at her in public places and in front of other individuals. He called her vile names and threatened to use a shotgun or baseball bat on her. On one occasion in January of 1995, Mr. Nigro threatened to kill Ms. Nigro, and got so violent that the police took him into custody. We think that testimony supports the trial judge's finding that Mr. Nigro had been guilty of inappropriate marital conduct. *See Schwalb v. Schwalb*, 282 S.W.2d 661 (Tenn. Ct. App. 1955).

## III.
### ALIMONY, ATTORNEY'S FEES, AND CHILD SUPPORT

At the end of the first hearing in January of 2000, the court awarded a $13,793.90 judgment in favor of Ms. Nigro for her attorney's fees. In the final decree of divorce, the court awarded Ms. Nigro an additional $17,675.00 as alimony in solido to cover her attorney's fees from June 2000 through the trial on August 10, 2001. Mr. Nigro asserts that he should not be required to pay these fees because Ms. Nigro is as capable of paying them as he is. For her part, Ms. Nigro asserts that Mr. Nigro should also pay the $11,623.60 in fees she incurred between the first trial and June of 2000, and the fees she will have to pay in defending this appeal.

The applicable standards governing the award of attorney's fees have been summarized in *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995):

> Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App. 1988). In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. App. 1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney fees. *Id.*; *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. App. 1980); *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. App. 1977). These awards are within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. App. 1988).

Mr. Nigro argues that Ms. Nigro makes more money than he does, therefore her proof fails to show her need and his ability to pay. But this view of his ability to pay concentrates exclusively on his current income. At the time of the first award, he had a job, and there is no proof that he is now unemployable. In addition, he received a substantial amount of property in the final decree, a factor to be considered in an alimony award. *See* Tenn. Code Ann. § 36-5-101(d)(H). In view of the broad discretion given to trial judges in these matters, we are not persuaded to alter the allocation of attorney's fees ordered in the trial court.

The same considerations persuade us to deny any further relief to Ms. Nigro. Considering the division of marital property and the respective incomes of the parties we believe she should pay the remaining fees incurred in the trial court and on appeal. *See Lindsey v. Lindsey*, 976 S.W.2d 175 (Tenn. Ct. App. 1997).

Mr. Nigro also challenges the court's order requiring him to pay alimony to Ms. Nigro to offset the child support she should be required to pay under the Child Support Guidelines. Ms. Nigro asserts that the court should have ordered Mr. Nigro to pay child support to her. These issues all address themselves to the discretion of the court and involve some of the considerations we have already addressed. We do not think the court abused its discretion in these matters.

## IV.
### THE MARITAL PROPERTY

The parties raise multiple issues about the division of the marital property. The final decree makes some specific rulings on the larger items. After ordering the marital home sold, the court ordered the equity split 75% to Mr. Nigro and 25% to Ms. Nigro. But the court required Mr. Nigro to pay numerous debts from his share.

Each of the parties had a retirement account generated from their employment in the public school system. In addition, Mr. Nigro draws a pension from his Navy service. The court awarded the retirement accounts to the individuals and awarded Ms. Nigro 31.4% of the Navy pension. Mr. Nigro asserts that the retirement accounts should have been divided in the same proportion as the other marital assets, 75% to him and 25% to Ms. Nigro. Alternatively, Mr. Nigro asserts that Ms. Nigro's share of his Navy pension should have been 30.7% rather than 31.4%. Ms. Nigro asserts that the Navy pension should have been divided equally. Without being specific about how the marital debts should have been divided, Mr. Nigro asserts that the trial court's allocation of the debts was inequitable. Ms. Nigro asserts that the court erred in the division of the equity in the marital home.

We note that neither party complied with Rule 7 of the Court of Appeals which requires an orderly tabulation of the value of the marital property and the party to whom the individual items of

-4-

property were awarded.[1]  Without this tabulation it is nearly impossible to arrive at what would be an equitable division of the marital property.  The final decree does not put values on the assets awarded to either party, so we would have to dig those values out of the record and weigh the parties' conflicting estimates of value.  We are not inclined to do that.  With the discretion given to the trial judges in making a division of the marital estate, *see Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. Ct. App. 1989), the burden is on the party dissatisfied with the division to show how the trial judge abused that discretion.  We think both parties have failed to do that in this case.

## V.
### PERMISSION TO RELOCATE

Mr. Nigro requested permission to permanently relocate outside the state of Tennessee with his younger son, Andy.  The court denied that request pending further orders of the court, until the son's relationship had been established with Ms. Nigro or until a good faith effort had been made to establish the relationship.

Parental relocation is governed by statute in Tennessee.  *See* Tenn. Code Ann. § 36-6-108. The process set out in the statute requires an agreement of the parties or court approval.  This case falls under section (d) which governs the situation where the parents are not spending substantially equal amounts of time with the child, and the parent spending the greater amount of time with the child wishes to relocate.  The legislature has proclaimed that that parent shall be allowed to relocate unless the court finds one of a number of facts the legislature cited as sufficient to deny the relocation.  *See* Tenn. Code Ann. § 36-6-108(d)(1)-(6).  One of the reasons to deny relocation is "The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody."  Tenn. Code Ann. § 36-6-108(d)(2).  The statute goes on to give some examples of "specific and serious harm."[2]  None of the examples includes the loss

---

[1] Belatedly, the appellant did file a tabulation of sorts showing some of the values and to whom some of the property was awarded.  But the list is so incomplete as to be practically useless in this court.  For instance, the list shows a $78,000 IRA listed as Mr. Nigro's but no designation as to whom it was awarded.  This item is not mentioned in the final decree.  The same is true of an $180,000 item shown as Philip Morris stock.  The court may have considered this as Mr. Nigro's separate property, but even if that is so, a party's separate property is relevant to the division of the marital estate.  *See* Tenn. Code Ann. § 36-4-121(c)(6).

[2] Specific and serious harm to the child includes, but is not limited to, the following:

(1) If a parent wishes to take a child with a serious medical problem to an area where no adequate treatment is readily available;
(2) If a parent wishes to take a child with specific educational requirements to an area with no acceptable education facilities;
(3) If a parent wishes to relocate and take up residence with a person with a history of child or domestic abuse or who is currently abusing alcohol or other drugs;
(4) If the child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child;
(5) If the custodial parent is emotionally disturbed or dependent such that the custodial parent is not

(continued...)

of a chance to establish a relationship with a parent. But we note that the examples given in the statute are non-exclusive; that is, specific and serious harm may include things other than the ones listed.

We think that it would amount to specific and serious harm for the child to lose the chance to become reconciled with his mother. It may be that reconciliation is not possible, but the trial judge's order denying the right to relocate is only temporary. After the parties have given reconciliation a chance, (which, by now, has surely occurred), Mr. Nigro may start the relocation process over again.

The judgment of the court below is affirmed. The cause is remanded to the Circuit Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Mr. Nigro.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

---

[2](...continued)
capable of adequately parenting the child in the absence of support systems currently in place in this state, and such support system is not available at the proposed relocation site; or
(6) If the proposed relocation is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system or which otherwise presents a substantial risk of specific and serious harm to the child.