IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

**JAMES R. GREEN v. JENNIFER LEIGH JOHNSON**

**Direct Appeal from the Chancery Court for Sumner County**
**No. 99D-316      Tom E. Gray, Chancellor**

_____

**No. M1999-00808-COA-R3-CV - Filed July 27, 2000**
_____

James R. Green appeals the trial court's final judgment dismissing his petition to establish the parentage of A.G.J., the minor daughter of Appellee Jennifer Leigh Johnson.  Green previously filed a petition to establish parentage in April 1997, but this petition was dismissed with prejudice based on Green's failure to prosecute the action.  In June 1999, Green filed the present petition in which he sought relief identical to that sought in the earlier petition.  We agree with the trial court's ruling that Green's present petition is barred by principles of *res judicata*, and we affirm the trial court's judgment of dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY K. LILLARD, J., joined.

Joseph Y. Longmire, Jr., Hendersonville, Tennessee, for the appellant, James R. Green.

Gary M. Williams, Hendersonville, Tennessee, for the appellee, Jennifer Leigh Johnson.

**OPINION**

          This is the second action that Green has filed seeking to establish his parentage of the minor child, A.G.J.  In his first petition, filed in April 1997, Green alleged that he and Johnson had a sexual relationship in October 1990, that Johnson became pregnant as a result of this sexual relationship, and that Johnson gave birth to A.G.J. in June 1991.  Green requested that blood tests be administered to determine his parentage of A.G.J., and he asked the trial court to establish a visitation schedule and to determine his support obligations.

          Within thirty days of the filing of Green's petition, Johnson filed an answer in which she indicated that she did not know if Green was the father of A.G.J.  In order to determine the issue of parentage, Johnson agreed to submit to the requested blood tests.

The record on appeal reflects no further efforts by Green to prosecute his first petition. In February 1998, Johnson filed a motion to dismiss based upon Green's failure to prosecute the action. *See* Tenn. R. Civ. P. 41.02(1). In her motion, Johnson alleged that arrangements were made for the parties to submit to blood tests at Gene Proof Technologies on June 12, 1997, but that Green failed to keep the appointment. Johnson's motion further alleged that Green had failed to reschedule the blood tests, despite communications to his counsel of the need to do so.

In March 1998, the trial court granted Johnson's motion and dismissed Green's petition with prejudice. Within days of entry of this order, Green filed a motion to set aside the order of dismissal. As grounds for his motion, Green alleged that his "counsel inadvertently failed to list the date of the motion to dismiss on his trial calendar and, therefore, was not in Court on the date of motion."

At the April 6, 1998, hearing on Green's motion to set aside, Green's counsel advised the trial court that Green desired to strike his motion to set aside the court's order of dismissal. Based upon this advice, the trial court entered an order granting Green's motion to strike, thus leaving intact the court's order of dismissal. Green did not appeal the trial court's orders.

On June 29, 1999, Green initiated the present proceedings when he filed a second petition seeking to establish the parentage of A.G.J. Green's second petition contained the same allegations and requested the same relief as his first petition. Johnson responded to the petition by filing a motion to dismiss. Citing the provisions of rule 41.02(3) of the Tennessee Rules of Civil Procedure, Johnson contended that the March 1998 dismissal with prejudice constituted an adjudication of the merits of Green's first petition and, thus, Green's second petition was barred by principles of *res judicata*.

The trial court agreed with Johnson's contention and, in September 1999, entered an order dismissing Green's second petition. On appeal from this order, Green contends that the trial court erred in dismissing his second petition because rule 41.02(3) should not apply to petitions to establish parentage. In support of this contention, Green argues that rule 41.02(3) conflicts with the provisions of this state's parentage statutes and violates the state's public policy regarding actions to establish parentage.

Rule 41.02 of the Tennessee Rules of Civil Procedure authorizes the trial court to dismiss a plaintiff's action if the plaintiff fails to prosecute the action or to comply with the rules or any court order. *See* Tenn. R. Civ. P. 41.02(1). Rule 41.02 also addresses the effect of such a dismissal:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits.

Tenn. R. Civ. P. 41.02(3).

On appeal, Green concedes that, as a general rule, a dismissal for failure to prosecute pursuant to rule 41.02 operates as an adjudication on the merits and bars a subsequent suit on the same action. *See, e.g.*, *Madyun v. Ballard*, 783 S.W.2d 946, 948 (Tenn. Ct. App. 1989). Green contends, however, that this rule should not be applied in the present case to bar his second petition to establish parentage.

In support of this contention, Green cites the following provision of Tennessee's parentage statutes:

> A petition to establish parentage may be brought under this part if a dismissal of a petition under the prior legitimization statutes was based upon the mother's marriage to another man at the time of conception or upon the petitioner's lack of standing. In such cases, the requirements of subdivision (b)(2)(A) requiring a petition to be filed within twelve (12) months of the birth of the child shall not apply. It is the intent of the general assembly that putative fathers who filed a cause of action under this chapter prior to the July 1, 1997, effective date of Acts 1997, ch. 477, and whose action was so dismissed, shall have an opportunity to prosecute a single cause of action under this part. Thus, the doctrines of *res judicata* and collateral estoppel shall not bar such new or pending action, nor shall any statute of limitation which may have run bar such new or pending action. It is the clear and unequivocal intent of the general assembly that this provision shall be applied retroactively to such petitions to establish parentage. No such retroactive application shall, however, abrogate the provisions of § 36-1-122.[1]

Tenn. Code Ann. § 36-2-304(b)(2)(B) (Supp. 1999) (footnote added).

This provision went into effect June 14, 1999, fifteen days before Green filed his second petition to establish parentage. *See* 1999 Tenn. Pub. Acts. 339. It amended the parentage statutes that the legislature enacted in July 1997, while Green's first petition was pending, to replace Tennessee's former paternity and legitimation statutes. *See* 1997 Tenn. Pub. Acts. 477. Citing this provision, Green contends that the doctrine of *res judicata* does not bar his present petition because the dismissal of his prior petition was based on his lack of standing.

We conclude that this argument lacks merit. The record indicates that Green's first petition seeking to establish his parentage of A.G.J. was dismissed, not because Green lacked standing to pursue the petition, but because Green failed to prosecute the action. Under these circumstances, Green cannot claim the benefit of section 36-2-304(b)(2)(B), and his present action is barred by principles of *res judicata*.

Green insists that, under the law in effect at the time he filed his first petition, a putative father lacked standing to pursue a petition to establish parentage if the child's mother refused to

---

[1]*See* Tenn. Code Ann. § 36-1-122 (1996) (regarding binding effect of adoption).

consent to the petition. *See* Tenn. Code Ann. § 36-2-202(c) (1996) (providing that "[n]othing herein shall be construed to authorize a putative father to legitimate a child or to execute any voluntary acknowledgment of paternity without the consent of the mother of such child"); *but see In re Hood*, 930 S.W.2d 575, 579-80 (Tenn. Ct. App. 1996) (holding that this provision was unconstitutional because it violated equal protection clauses of both federal and state constitutions). In the present case, however, Johnson did not refuse to consent to the first petition. Rather, Johnson initially agreed to submit to blood tests to establish A.G.J.'s parentage. Johnson only moved for dismissal after the action had been pending for over nine months and Green had not made any efforts to prosecute the action.

We also reject Green's contention that the application of rule 41.02(3) to parentage actions violates this state's public policy to determine a child's true parentage and to foster relationships between a child and the child's biological parents. The determination of this state's public policy "is primarily a function of the legislature." *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn. 1998). If the legislature has enacted a statute that addresses the subject in question, then "the [public] policy reflected therein must prevail." *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn. 1978).

In enacting the cited provision in 1999, the legislature clearly determined the public policy of this state when it excepted certain parentage actions from the preclusive effects of the *res judicata* doctrine. The excepted actions included those dismissed under the prior legitimation statutes if the dismissal was based on (1) "the mother's marriage to another man at the time of conception," or (2) "the petitioner's lack of standing." Tenn. Code Ann. § 36-2-304(b)(2)(B) (Supp. 1999). As we previously indicated, Green cannot claim the benefit of this statute because the dismissal of his prior parentage action fell within neither of these two exceptions. Although the legislature could have included within the foregoing exceptions prior legitimation actions that were voluntarily abandoned by the putative father, the legislature did not do so.

Accordingly, the trial court's judgment of dismissal is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, James R. Green, and his surety, for which execution may issue if necessary.

DAVID R. FARMER, JUDGE