FILED

02/03/2026

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2025 Session

## JING HAN BELFIGLIO ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 20C334, 22C357      Lynne T. Ingram, Judge**

_____

**No. M2024-01504-COA-R3-CV**

_____

A landslide led neighboring property owners to jointly file suit against Metro Water Services. Further investigation complicated their understanding of what may have caused the landslide, resulting in withdrawal of their shared counsel and in one property owner bringing suit against the other while still maintaining the action against Metro Water Services. While all three parties engaged in a variety of settlement-related actions, the suit filed by one property owner against the other sat largely dormant. This sparked a motion to dismiss for failure to prosecute. The trial court held the motion in abeyance. While the settlement-related matters became ever more mired, the case did not move forward. Fifteen months later, the trial court granted the motion to dismiss for failure to prosecute and awarded attorney's fees. Because we are unable to determine the trial court's basis for the award of attorney's fees from its order, we vacate that portion of the judgment and remand for further findings. Otherwise, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; and Remanded

JEFFREY USMAN, J., delivered the opinion of the court, in which ANDY D. BENNETT and VALERIE L. SMITH, JJ., joined.

August C. Winter, Brentwood, Tennessee, for the appellant, Xingkui Guo.

Grover C. Collins, Patrick H. Stone, and Megan R. Geer, Nashville, Tennessee, for the appellees, Anthony Belfiglio and Jing Han Belfiglio.

# OPINION

## I.

Jing Han Belfiglio and Anthony Belfiglio live in a house that shares one wall with the home of Xingkui Guo and his wife, Xiaohua Jiang, who is not named on the deed to the property. After two landslides caused significant damages to their properties, the Belfiglios and Mr. Guo jointly filed suit against The Metropolitan Government of Nashville and Davidson County d/b/a Metro Water Services. They alleged that Metro Water Services was responsible for a defective stormwater pipe on the Belfiglios' property that had introduced water onto their properties, causing the landslides. The property owners sought a declaratory judgment setting forth rights related to the storm drainage system as well as an injunction requiring Metro Water Services to remediate and maintain the system surrounding their properties. They also sought actual and compensatory damages for negligence, nuisance, and trespass.

After Metro Water Services informed the property owners that its investigation led it to conclude that the landslides were "a private property issue," Mr. Guo filed a suit against the Belfiglios. According to Metro Water Services, "the landslides, which occurred on a steep slope, were caused by factors wholly unrelated to the stormwater pipe." Allegedly, the defective pipe was too far from the landslides to have caused them. Still convinced that the pipe was the root of his issues, Mr. Guo brought generally the same claims against the Belfiglios as he had against Metro Water Services. The court consolidated the two cases.

In June 2022, Mr. Guo, the Belfiglios, and Metro Water Services participated in mediation of the two cases. Mr. Guo's wife, Ms. Jiang, and their two minor children also attended the mediation. There, each of the parties and Ms. Jiang signed a brief document titled "Settlement Terms Sheet," which stated:

> As indicated by the signatures below, the parties in the above-captioned actions have reached a compromise to resolve their claims and potential claims against one another on the following general terms, which will be memorialized in a Final Settlement Agreement and Release:
>
> (1) The parties will provide each other with comprehensive mutual releases of liability;
>
> (2) The Guos will agree to indemnify Metro and the Belfiglios for any damages related to the fill-dirt and slide area that is located on the Guos' property . . .;

- 2 -

(3) The Belfiglios will pay the Guos a total of $105,000 [in five installments of $21,000 each between July 2022 and November 2023];

(4) The Metropolitan Government of Nashville and Davidson County . . . will pay the Guos $15,000 within ten (10) days of the execution of the Final Settlement Agreement and Release;

(5) Metro will replace the stormwater drainage pipe located on the Belfiglios' property with a new stormwater drainage pipe, will remove and replace the existing drain on the curb in front of the Belfiglios['] property, and will reconfigure the curb at the same location.

According to Metro Water Services, "two of the main bargaining points" of the agreement were the inclusion of Ms. Jiang and the indemnification provision. Ms. Jiang had "participated in" the mediation, and Metro Water Services wanted to ensure that she would not later bring against them claims similar to those her husband had already made. Metro Water Services also did not believe that replacing the pipe and drain would "do anything to fix the slide area," which remained at "significant risk for future sliding." Furthermore, Mr. Guo had brought "dump truck loads of uncontrolled soil materials and fill" to the slope. Metro Water Services contended that this "was wholly improper; a major contributor to further destabilizing the slope; and likely to fail in the future."

Following the mediation, Metro Water Services circulated a draft of the "Settlement Agreement and Release" documents contemplated by the Settlement Terms Sheet, but Mr. Guo refused to sign them. Mr. Guo instead fired his attorneys, levying a variety of accusations at them regarding their conduct during and after the mediation. According to Mr. Guo, his attorneys did not call his wife by the correct surname and wrongly included her as a signatory to the Settlement Terms Sheet. He also claimed that the attorneys never showed him the part of the Settlement Terms Sheet containing the indemnification provision. Furthermore, after circulation of the draft Settlement Agreement and Release documents, the attorneys allegedly "refused to explain the legal terms" and "refused to correct the errors in the document[s]." Mr. Guo's former attorneys rebutted each accusation and moved to withdraw from the case.

Now acting pro se, Mr. Guo emailed the respective attorneys for the Belfiglios and for Metro Water Services on November 10, 2022, regarding the purported errors affecting the Settlement Terms Sheet and the resulting draft Settlement Agreement and Release documents. Therein, he claimed that his former attorneys "did not represent [his] interest in the mediation," "did not follow the mediation agreement," failed to "declar[e] a conflict of interest," and "forced" him to sign "the memo of mediation." He wrote that he had even "tried withdrawing from the mediation, but [his attorneys] would not let [him]," and that the entire "mediation process was fraudulent." As a remedy, he "propose[d] some changes

to the settlement," including the removal of his wife's name and the removal of the indemnification provision.

On November 14, 2022, the court granted Mr. Guo's attorneys' motion to withdraw. The same day, counsel for Metro Water Services responded to Mr. Guo's email: "If you and Ms. Xiaohua Guo do not sign the attached Settlement Agreement . . . by Friday, November 18th, Metro will seek relief from the Court." On December 15, 2022, counsel for the Belfiglios responded similarly: "The [Settlement Terms Sheet] was signed. We will be moving to enforce the signed agreement." The attorneys and Mr. Guo exchanged a few more brief emails that same day regarding possible scheduling for a hearing on the matter, but no motions were filed.

The record reflects that nothing else took place in either the case against Metro or Mr. Guo's case against the Belfiglios for more than a year. On December 20, 2023, with the case sitting dormant, the Belfiglios moved to dismiss Mr. Guo's action against them for failure to prosecute. Since Mr. Guo had filed his complaint against the Belfiglios "over twenty-one (21) months ago," they observed that "the only litigation or filings made in the case ha[d] been the consolidation with the First Complaint . . . and filings related to [Mr.] Guo's attorneys withdrawing from the case."

In the wake of the motion to dismiss for failure to prosecute, Mr. Guo filed a motion to modify the Settlement Terms Sheet in which he asked the court to reshape the terms of the signed agreement in the manner opposing counsel had refused to do more than a year prior. By this and a series of subsequent filings, Mr. Guo continued to offer numerous rationales for why the court should redraft the Settlement Terms Sheet per his request. Among these, he complained that one of his former attorneys "worked for Defendants[] during the mediation," that they had "forced [Ms. Jiang] to sign" by telling her that "otherwise [she] could not leave," that Ms. Jiang "was not permitted to speak during the mediation," that they had "forcibly barred [Mr. Guo's] exit from the mediation room," that the contract was unconscionable, and that all of the various attorneys had "conspired" together against him. He blamed his yearlong lack of forward momentum in the two cases on the emails in which the attorneys for Metro Water Services and for the Belfiglios had suggested they would take action to enforce the agreement.

Mr. Guo steadfastly argued that Ms. Jiang was "not allowed to be a Plaintiff or Defendant" in either of the cases because her name was not on the title to their property. Based on this, he asserted that she could not be a party to the settlement agreement either. He claimed that she was not a "party in interest" and to include her as a plaintiff would be a violation of the Tennessee Rules of Civil Procedure. He continued to assert this even after Metro Water Services responded that Ms. Jiang "likely has an interest" in the property based on living there while married to Mr. Guo. Mr. Guo insisted that he was "the only owner of the property" and that adding Ms. Jiang as a party to the action was "illogical."

- 4 -

Neither Metro Water Services nor the Belfiglios had filed any motion to enforce by the time the court heard the Belfiglios' motion to dismiss for failure to prosecute and Mr. Guo's later-filed motion to modify the Settlement Terms Sheet. When the mention of enforcing the Settlement Terms Sheet "came up at the hearing," the court reminded the parties that "this [was] not presently before the Court" and that it would address the issue if "the parties decide[d] to file a motion to enforce." To this end, the court decided to hold the Belfiglios' motion to dismiss in abeyance to permit the parties extra time to make a decision.

The court denied Mr. Guo's motion to modify the Settlement Terms Sheet. It gave little weight to "the accusations [of fraud, duress, and mistake] made by Mr. Guo," and it found that the document was not unconscionable. As for Ms. Jiang, the court found that she "was present, as indicated by her signature, during the mediation, and that she was properly identified in the Settlement Term Sheet." It concluded that "the Settlement Term Sheet is, in fact, simply a contract between the parties, and it cannot and will not be amended by the court." That contract required the parties to draft and sign "a Final Settlement Agreement and Release" elaborating on its general terms.

Instead of filing a motion to enforce the Settlement Terms Sheet while the court held the motion to dismiss in abeyance, the parties drafted entirely new documents. First, Metro Water Services circulated a new draft Settlement Agreement and Release, which contained some alterations from the previous version. It claimed that these changes were meant to "address[] some of Mr. Guo's concerns" with the original Settlement Terms Sheet. Mr. Guo persisted in his refusal to sign. He wrote back to them: "your [new draft] contains a lot [of] material changes which the court [does] not allow." He then drafted and signed his own version of the Settlement Terms Sheet, which he claimed was "loyal to" what he had agreed upon at mediation and which excluded the terms he still perceived as "errors." He included in his version of the document new demands that "Metro complete the repair job within two months" and that "[t]he Belfiglios pay the Guos a total of $105,000 within five (5) days, plus accrued interest of $6355.23." He alleged that his damages were "substantial and continuing," especially because his "contractor's backfilled earth [had been] washed away again."

Mr. Guo and Metro Water Services each moved to enforce their respective newly drafted documents. The Belfiglios, however, suggested that neither of these documents could be enforced because there had been no meeting of the minds with regard to the settlement. To the Belfiglios, one of the main benefits of the settlement — "the litigation being done" approximately two years earlier — had been destroyed by the extensive, ongoing litigation alleging fraud, duress, and mistake in the Settlement Terms Sheet that had followed their motion to dismiss. Now, Mr. Guo and Metro Water Services were dueling over brand new documents. In a reversal of his previous argument, Mr. Guo now agreed with Metro Water Services that a valid settlement agreement had been reached during the mediation. However, each of those parties demanded that their new document

be enforced as the only correct representation of the terms allegedly agreed upon during that mediation.

At the hearing on the competing motions to enforce, both drafting parties acknowledged that the terms of the documents they sought to enforce were different from those contemplated by the Settlement Terms Sheet. Mr. Guo's position remained that "we should cancel the original Settlement Term Sheet" and enforce his new version, which "correct[ed] the error[s]" he perceived in the contract. Metro Water Services stated that its document addressed some of Mr. Guo's concerns. That document "corrected the spelling of [Ms. Jiang's] name [and] put in another provision in there specifically indicating, as [Mr. Guo] insisted, that she is not a party to the litigation." When the court asked if this document contained any other changes from the original settlement terms, Metro Water Services responded, "I don't recall, Your Honor. I think I did put in a paragraph in there that I mentioned to Mr. Guo that we may need easement agreements. But that, in our view, is not any material change in what's agreed . . ." The court ruled that it could not enforce either of the draft documents. The court determined that neither party had presented for enforcement a final Settlement Agreement and Release that complied with the terms of the original signed Settlement Terms Sheet.

The court then considered the Belfiglios' motion to dismiss, which had been pending, by this point, for more than 15 months, which had been preceded by more than a year of inaction. Mr. Guo argued that, because that case had been consolidated with the case against Metro Water Services, it had "not started yet." *But see* Tenn. R. Civ. P. 3 (stating that "[a]ll civil actions are commenced by filing a complaint with the clerk of the court"). He "request[ed] the court continue this case because it is not prosecuted" so that he could propound discovery upon the Belfiglios.

The court dismissed the case against the Belfiglios with prejudice.[1] It found that Mr. Guo had filed the complaint against the Belfiglios in February 2022 and had attended

---

[1] By the same order, the court also dismissed Mr. Guo's claims against Metro Water Services in the other consolidated case. Following the dismissal of those claims, Mr. Guo sought their reinstatement in the trial court, but the trial court denied his request. Mr. Guo initially appealed this dismissal as part of this appeal. In his briefing, he raised a jurisdictional question in relation to the dismissal of the case against Metro that is inapplicable to the present case. However, prior to oral argument in the present case, Mr. Guo settled his claims against Metro Water Services. Upon request, this court issued an order that provided, in part, as follows:

> Mr. Guo's appeal is hereby dismissed as to Metro, Davidson County Circuit Court Case No. 20C334. Case No. 20C334 is remanded to the trial court for further proceedings consistent with the parties' settlement.

> The remainder of the appeal involving Appellees Jing Han Belfiglio and Anthony Belfiglio, Davidson County Circuit Court Case No. 22C357, remains pending and shall proceed in accordance with the Tennessee Rules of Appellate Procedure.

a mediation in June 2022. Other than that, "there [was] minimal action taken until December 20, 2023, when the Belfiglios filed their Motion to Dismiss for failure to prosecute." In fact, "[s]ince September 21st of 2022, nothing happened" at all in either of the consolidated cases. The court had held the motion to dismiss for failure to prosecute in abeyance and granted significant extra time for the parties to enter a settlement agreement as contemplated by the Settlement Terms Sheet. After all that time, still none of the parties had followed through with the contract; Metro Water Services and Mr. Guo were still negotiating its terms. The trial court found that "Mr. Guo's conduct throughout the proceedings consistently reflected no intentions of pursuing his claims outlined in the complaint." To the contrary, the trial court determined that "it is clear that his actions are solely intended to prolong the resolution process." The trial court also noted "Mr. Guo's unwillingness to advance the case and repeated efforts to delay resolution." In addition to dismissing Mr. Guo's suit against the Belfiglios with prejudice, the trial court also granted the Belfiglios attorney's fees from the date of filing the motion to dismiss and ordered Mr. Guo to pay them the amount of $10,887.09, "due immediately."

Mr. Guo moved to "alter, amend or set aside judgment and to strike [the] award of attorney's fees." He sought reinstatement of the case as well as the introduction of additional evidence and arguments. The court denied the motion. In ruling upon the motion, the trial court again observed Mr. Guo's "repeated attempts . . . [to] drag this litigation out for years."

Mr. Guo appeals. He raises three arguments. One, he contends that the circuit court erred in dismissing his case against the Belfiglios based upon failure to prosecute. Two, in a complete reversal of his position before the circuit court, he argues that his wife Ms. Jiang was an indispensable party and that the case must be remanded to include her. Three, he argues that the trial court erred by awarding attorney's fees.

II.

Turning first to Mr. Guo's challenge to the dismissal of his suit against the Belfiglios based upon failure to prosecute, Mr. Guo contends that the circuit court erred in its application of Tennessee Rule of Civil Procedure 41.02. We review a trial court's decision to dismiss a case for failure to prosecute for an abuse of discretion. *White v. Coll. Motors, Inc.*, 370 S.W.2d 476, 477 (Tenn. 1963); *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 864 (Tenn. Ct. App. 2000). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015).

---

Thus, Mr. Guo's suit against Metro and the arguments in relation thereto are no longer before us.

Rule 41.02, which governs involuntary dismissals, provides that, "[f]or failure of the plaintiff to prosecute or to comply with these rules [of civil procedure] or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Tenn. R. Civ. P. 41.02(1). Such a dismissal generally "operates as an adjudication upon the merits" of the case. Tenn. R. Civ. P. 41.02(3); *see Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) (describing dismissal for failure to prosecute as "analogous to a default judgment").

"[I]n Tennessee, trial courts possess broad discretionary authority to control their dockets and the proceedings in their courts." *Kirk v. Kirk*, 447 S.W.3d 861, 875 (Tenn. Ct. App. 2013). This broad authority "includes the express authority to dismiss cases for failure to prosecute." *Hodges v. Att'y Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). This court has described the rule as "necessary" to serve two purposes: (1) "to enable the court to manage its own docket" and (2) "to protect defendants against plaintiffs who are unwilling to put their claims to the test, but determined to subject them to the continuing threat of an eventual judgment." *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). We have recognized that trial courts "must have available the most severe spectrum of sanctions," including the dismissal for failure to prosecute, "not merely to penalize those whose conduct warrants sanctions but also to deter others who might be tempted to engage in similar conduct if the sanction did not exist." *Kotil v. Hydra-Sports, Inc*, No. 01-A-01-9305-CV00200, 1994 WL 535542, at *3 (Tenn. Ct. App. Oct. 5, 1994) (citing *Holt v. Webster,* 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982)).

Mr. Guo suggests on appeal that any mistakes he made at the trial level do not rise to the level of "the kind of willful misconduct that warrants the imposition of the drastic sanction of dismissal for failure to prosecute" because he was acting pro se for much of the case. *See Durham v. Tenn. Dep't of Labor & Workforce Dev.*, No. M2014-00428-COA-R3-CV, 2015 WL 899024, at *9 (Tenn. Ct. App. Feb. 27, 2015) (stating that the "punishment must fit the offense" (quoting Pegues v. Ill. Cent. R. Co., 288 S.W.3d 350, 354 (Tenn. Ct. App. 2008)). He cites no law in support of the contention that the court must find "willful misconduct" prior to dismissal of a case for failure to prosecute. Indeed, Rule 41.02 does not require such a finding. *See* Tenn. R. Civ. P. 41.02; *see also, e.g., Hessmer v. Hessmer*, 138 S.W.3d 901, 904-05 (Tenn. Ct. App. 2003) (affirming dismissal of a plaintiff's case despite a court clerk's failure to comply with a local rule requiring the court to give the plaintiff notice that his complaint was subject to be dismissed); *Morris v. State*, 21 S.W.3d 196, 202-03 (Tenn. Ct. App. 1999) (affirming dismissal of a plaintiff's claim for damages for failure to prosecute despite prior grant of partial summary judgment to the plaintiff).

Still, in Mr. Guo's view, because of his pro se status, the court abused its discretion in finding meritless his argument that he believed the case against the Belfiglios had "not started yet" because of its consolidation with the case against Metro Water Services. He also argues that "the Belfiglios should not benefit by lulling [him] into inaction" by the

email indicating that they intended to pursue a motion to enforce. However, Mr. Guo's pro se status below does not change the nature of the analysis with respect to the proceedings regarding dismissal under Rule 41.02.

This court has repeatedly held that "[p]arties who choose to represent themselves are not excused from complying with the same applicable substantive and procedural law that represented parties must comply with." *Hodges*, 43 S.W.3d at 920 (citing cases). "*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). This is so in part because pro se litigants are not "entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Additionally, courts must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary," and thus must require compliance with the same law. *Hessmer*, 138 S.W.3d at 903.

Additionally, the record does not support Mr. Guo's contention, on appeal, that he "acted with reasonable diligence to enforce his claims" against the Belfiglios. The record reflects that, after filing the complaint against them in February 2022, Mr. Guo attended mediation in June 2022, at which the Settlement Terms Sheet was signed. He then contacted the Belfiglios' counsel in November 2022, after firing his attorneys, to allege fraud by those attorneys and to propose changes to the settlement terms. In December 2022, he discussed via email potential hearing dates for a hypothetical motion to enforce by the Belfiglios. Aside from filings related to consolidation of the two cases and the withdrawal of Mr. Guo's attorneys, no other action had been taken in the case against the Belfiglios until their motion to dismiss. We do not find persuasive Mr. Guo's contention that he was under a misimpression that he only had to take action in one of the cases to keep both cases moving forward. The record reflects that no action was taken by any party in either case for more than a year before December 2023.

Furthermore, the trial court held the motion to dismiss in abeyance for fifteen months, providing Mr. Guo significant additional time to advance the case while fully aware that the Belfiglios were seeking to have the case dismissed for failure to prosecute. Instead, Mr. Guo and Metro Water Services each simply drafted and sought to enforce their own new documents, which they admitted were different from the signed Settlement Term Sheet. With nothing to enforce still, the trial court considered the motion to dismiss that it had held in abeyance for over 15 months.

We have previously affirmed the dismissal of cases for failure to prosecute when they have languished for similar, or even shorter, times than the case at hand. *See Geico Gen. Ins. Co. v. G & S Transp., Inc.*, No. M2016-00430-COA-R3-CV, 2016 WL 6087660 (Tenn. Ct. App. Oct. 17, 2016) (affirming dismissal for failure to prosecute when more than 15 months had passed without any action); *Hessmer*, 138 S.W.3d at 905 (affirming dismissal for failure to prosecute where plaintiff made no effort to properly serve the

defendant for seven months); *Bender v. Nashville Elec. Serv.*, No. M2006-02509-COA-R3-CV, 2008 WL 440509, at *3 (Tenn. Ct. App. Feb. 14, 2008) (affirming dismissal for failure to prosecute where little action took place in 20 months); *Green v. Johnson*, 59 S.W.3d 102, 105 (Tenn. Ct. App. 2000) (affirming dismissal of case that had been pending for over nine months for failure to prosecute).

As noted above, the trial court found that "Mr. Guo's conduct throughout the proceedings consistently reflected no intentions of pursuing his claims outlined in the complaint." To the contrary, the trial court determined that "it is clear that his actions are solely intended to prolong the resolution process." The trial court also noted "Mr. Guo's unwillingness to advance the case and repeated efforts to delay resolution." And, in denying his motion to alter or amend, the trial court observed Mr. Guo's "repeated attempts . . . [to] drag this litigation out for years."

In light of the record before us, we discern no abuse of discretion in the court's dismissal of the case for failure to prosecute. The trial court properly applied the appropriate legal principles, its basis for dismissal is supported by evidence in the record, and its decision was within the range of acceptable alternatives. *See Castillo v. Rex*, 715 S.W.3d 321, 328 (Tenn. 2025); *Lee Med. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

III.

Mr. Guo also argues that this court should overturn the dismissal of the case for failure to prosecute, as well as any other orders filed after the motion to dismiss, and remand with instructions for the court to join Ms. Jiang as a party plaintiff. He admits that he never sought joinder in the trial court below, but he contends that this court must consider the question *sua sponte*. In so doing, he reverses his prior vociferously argued position before the circuit court that Ms. Jiang definitively had no interest in the property at issue and could not be a party to the case. On appeal before this court, he now argues that the trial court had to join Ms. Jiang because she may "have a colorable property interest such that she should be joined as an indispensable party pursuant to [Tennessee Rule of civil Procedure] 19.01." He notes the possibility that the home, though titled in his name only, has been transmuted or comingled such as to create a possible property interest in the home in his wife, Ms. Jiang.

Rule 19.01, which governs the joinder of indispensable parties, provides as follows:

A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest . . .

Tenn. R. Civ. P. 19.01. This language is "mandatory and directive" and "applies to both trial courts and appellate courts." *Baker v. Foster*, No. W2009-00214-COA-R3-CV, 2010 WL 174773, at *4 (Tenn. Ct. App. Jan. 20, 2010). Thus, "[w]hen an indispensable and necessary party has not been joined, neither the trial court nor the appellate court may proceed further with the matter." *Id.*

In addressing this issue, we assume for purposes of argument that Mr. Guo's adoption of a litigation position before the circuit court that stands in diametric opposition to his position on appeal, Ms. Jiang's knowledge of the present litigation during the trial court proceedings, and Ms. Jiang's resistance to being party thereto are immaterial to addressing Mr. Guo's argument on appeal. Even with those assumptions, Mr. Guo's argument on this point is ultimately unavailing.

Tennessee law has long drawn a distinction between indispensable or necessary parties and proper parties. This court explained in *Brewer v. Lawson* that

A proper party is not the same as a necessary or indispensable party. Only a party who will be directly affected by a decree and whose interest is not represented by any other party to the litigation is an indispensable or necessary party, that is, one without which no valid decree may be entered settling the rights between the parties that are before the Court.

569 S.W.2d 856, 858 (Tenn. Ct. App. 1978). This court has indicated that "[a] 'proper party' to a lawsuit is one who has legal or equitable rights in the subject of the litigation." *Hill v. Hill*, 682 S.W.3d 184, 207 (Tenn. Ct. App. 2023) (quoting *Horton v. Tennessee Dept. of Correction*, No. M1999-02798-COA-R3-CV, 2002 WL 31126656 (Tenn. Ct. App. M.S. Sept. 26, 2002)) (citing *Steele v. Satterfield*, 148 Tenn. 649, 654, 257 S.W. 413, 414 (1923)). We have also repeatedly observed that proper parties are not necessarily indispensable or necessary parties to litigation under Tennessee Rule of Civil Procedure 19.01. *See, e.g.*, *Raines Bros. v. Chitwood*, No. E2013-02232-COA-R3CV, 2014 WL 3029274, at *6 (Tenn. Ct. App. July 3, 2014) (quoting *Moore v. Teddleton*, No. W2005-

02746-COA-R3-CV, 2006 WL 3199273, at *6 (Tenn. Ct. App. Nov. 7, 2006) (indicating that "a proper party is not necessarily an indispensable party for the purposes of Tenn. R. Civ. P. 19.01")).

Insofar as Ms. Jiang may, despite Mr. Guo's protestations to the contrary before the circuit court, have some property interest in the home, she is, nevertheless, not an indispensable party for purposes of Mr. Guo's suit against the Belfiglios. Mr. Guo's and Ms. Jiang's interests are aligned. Under Tennessee law, to be truly indispensable, the party's interests must not be represented by any other party to the litigation. *Brewer*, 569 S.W.2d at 858. This court has repeatedly found a party to be proper but not indispensable where the party's interests are represented by another party to the litigation. For example, in *Moore v. Teddleton*, this court indicated that, "Although Mr. Teddleton was affected by the chancellor's decree in the Kyle suit, he and the Moores would appear to have had an identity of interests. Both parties would have benefitted if the Moores were allowed to keep the property in its entirety." 2006 WL 3199273, at *7 (Tenn. Ct. App. Nov. 7, 2006). Similarly, in *Locke v. Locke*, the trial court again declined to find a party to be indispensable because "any interest Mother may have held in the Disputed Property was represented by Defendants." 2022 WL 3650806, at *5. In the same vein, this court stated that "[b]ecause Ms. Hill's and Husband's interests were aligned concerning the cattle, her interest was represented by Husband." *Hill*, 682 S.W.3d at 207–08. Again, in *Raines Bros. v. Chitwood*, this court observed that "[i]n this case, Mr. Dreaden was not the trustee under a deed of trust; rather, he was listed as the record owner of the property, in his capacity as trustee, on the warranty deed. This does not, however, render Mr. Dreaden to be an indispensable party to this litigation because his interests were represented by Mr. Chitwood." 2014 WL 3029274, at *6. Alternatively, where, for example, parties were contesting amongst each other for ownership interest in an LLC, this court concluded that they were indispensable parties precisely because "their interests were not represented by any other party to the litigation." *Romglobal, Inc. v. Miller*, No. E2019-00058-COA-R3-CV, 2020 WL 476904, at *9 (Tenn. Ct. App. Jan. 29, 2020). Accordingly, under longstanding Tennessee law, Ms. Jiang does not qualify as an indispensable party for purposes of Mr. Guo's suit against the Belfiglios.

IV.

We next turn to Mr. Guo's argument that the trial court improperly awarded the Belfiglios attorney's fees. With regard to attorney's fees, Tennessee "adheres to the 'American rule.'" *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). "Under the American rule, 'a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case.'" *Individual Healthcare Specialists, Inc. v. BlueCross*

*BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 705 (Tenn. 2019) (quoting *Cracker Barrel*, 284 S.W.3d at 308).

The trial court awarded attorney's fees to the Belfiglios from the date of filing their motion to dismiss because it "recognize[d] Plaintiff Guo's unwillingness to advance the case and repeated efforts to delay resolution." It did not cite any statutory, contractual, or other recognized exception to the American Rule supporting this decision. Nor is it apparent from the motion to dismiss referenced by the trial court what the basis of the award of attorney's fees is predicated upon in the present case. We have on prior occasions vacated an award of attorney's fees and remanded the issue when the trial court has failed to offer a basis for the award of attorney's fees. *See, e.g., Thomas v. Smith*, 682 S.W.3d 213, 232 (Tenn. Ct. App. 2023), *appeal denied* (Nov. 17, 2023). We similarly vacate the award of attorney's fees and remand for appropriate findings regarding the basis of any such award.

V.

For the aforementioned reasons, we affirm in part and vacate in part the judgment of the trial court. Costs of this appeal are taxed to the appellant, Xingkui Guo, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

- 13 -